65 So.2d 299 (1953)
ANDERSON
v.
MADDOX.
Supreme Court of Florida, Special Division B.
May 22, 1953.
Frank A. McClung, Tampa, for appellant.
Wilbur Whitehurst, Wauchula, for appellee.
THOMAS, Justice.
The appellant alleged in his complaint that he was a totally disabled veteran of World War II, eight ribs and part of his shoulder bone having been removed. While his strength was thus impaired he engaged in a conversation with appellee, County Judge, in the Court House of Hardee County, in the course of which the appellee, without provocation and with the intention of doing the appellant great bodily harm, set upon the appellant, striking him repeatedly about the head and body, breaking a denture and inflicting grievous injuries. *300 The appellant capped the description of the injuries with an averment that he had been embarrassed, humiliated and degraded by the experience. For all this he claimed damages.
The appellee immediately filed an answer containing denials of the material allegations of the complaint.
Then the depositions of the parties and two physicians were taken. From the contents of these, or so much of them as seems relevant to the question we must decide, we will attempt to reconstruct the episode that gave rise to this litigation.
The appellee had practiced law for two or three years before becoming County Judge, an office he had held for fifteen years and was holding at the time of the encounter. His court had jurisdiction of the administration of estates and, incidentally, of the offense of assault and battery. The parties engaged in a conversation about an order entered in an estate matter and eventually their discussion developed into an argument. The argument became an altercation and then the appellant called the appellee "a damn liar," whereupon the appellee struck the appellant with his fist. The appellee admitted that he struck the blow.
One of the physicians whom appellant consulted said there was "swelling over his [appellant's] left ear and of the skin in the left temporal area and upper eyelid"; that there were "contusions and haematoma" on the left side of the face and head which the doctor considered of "minor importance," although they would likely cause discomfort for several days. This doctor prescribed the application of cold packs to the area around the eye.
The other physician recalled only that appellant's eye was slightly inflamed.
Pursuant to the depositions the appellee presented a motion for summary judgment on the grounds that no genuine issue of fact was presented and that no "recoverable" damages had been suffered.
A few days later the Circuit Judge granted the motion and entered a judgment that the appellant take nothing by his complaint reciting the judge's conviction that there was no genuine issue to be submitted to a jury because it did not appear from the depositions that the appellant had suffered "substantial or recoverable damages * * *."
With this disposition of the controversy we are impelled to disagree. The movant could prevail only if it appeared that there was "no genuine issue as to any material fact" and that he was "entitled to a judgment as a matter of law." Common Law Rule 43(c), 30 F.S.A. The plain purpose of this new rule is to obviate the expense and delay of summoning a jury in a case to try facts that are not in conflict. If the salient facts are established beyond dispute the question then arises whether one party or the other should be awarded a judgment as a matter of law which the judge may decide using the established facts as a premise. In other words, the dispute over facts being eliminated the triers of facts need not be called, and the trier of the law, so to speak, then determines the proper decision to be rendered. We find no such situation here. It is true that the pivotal fact was not denied for the appellee admitted that he hit the appellant, and it is equally clear that there was no excuse for the act because the blow was exchanged for an epithet and words do not justify such action. But this material fact of wrongdoing, without any justification, supported the appellant's position, not the appellee's.
From our study of the record and the appellant's brief we get the definite impression that the case was concluded on the theory that the damage to appellant's person was inconsequential. Were that rule accepted, it would relieve any one from civil liability for battering another so long as the injuries inflicted on his victim's body were not too marked. In assuming such a position it would be necessary to disregard elements of damage, other than actual disfigurement, which should be considered by a jury once an unwarranted assault and battery has been proved. In the complaint in the present case, upon which no attack was made, damages were *301 claimed, as we stated at the outset, for pain, embarrassment, humiliation and degradation.
The physicians testified that no serious physical injury to appellant resulted from the battery but, even so, they did not undertake to say that his body did not bear evidence of the blow.
We think the appellant was entitled to a determination by a jury of his actual damages, and, if he proved any to the jury's satisfaction, to have the jury fix the amount of punitive damages as well.
The judgment is reversed with directions to proceed with a trial of the issue of damages only.
Reversed.
TERRELL, Acting C.J., concurs specially.
HOBSON and DREW, JJ., concur.
TERRELL, Justice (concurring specially).
I concur in the opinion of Mr. Justice THOMAS. I think it covers the law of the case but there is implicit in it a question of ethics or judicial restraint on which an expression of opinion is at least not out of place. As pointed out by Judge THOMAS, the fracas out of which the case arose had its genesis in a controversy over an order entered by appellee who was at the time and had been County Judge of his county for fifteen years. He was also a member of the bar. Appellant suffered under a serious physical handicap which may have actuated him to enroll appellee in the Ananias Club and crown him with the epithet "damn liar."
It is a matter of common knowledge that "damn liar" and a few other "names" have long been a part of the fighting folklore of the rural South, but even though it be a guidon for combat among some, it is not so considered for the lawyer and the judge clothed with the more serious responsibility of administering one's estate, deciding his cases, determining the destiny of his children and in dozens of other ways directing the course of his person, his property, his business and his domestic affairs. Every level of the people from the flophouse to the drawing room prefers that these rites be performed by lawyers of known prudence, discretion, and restraint, who have a solid reputation for high standards of moral character and integrity. I know of no more sacred trust that the lawyer or the judge is called on to perform or one in which the public is more vitally interested. It is a trusteeship that calls for the best there is in us.
No prudent lawyer or judge would think of striking an idiot for calling him a "damn liar" no matter what the provocation. Then why strike a cripple for doing so? The psychologists tell us that the gap between the idiot and the top IQ is surprisingly narrow and more easily bridged than generally presumed. Instead of striking appellant with his fist, appellee would have revealed a much higher degree of prudence and judicial quality if he had ignored the assault, turned and walked away. Such an act of restraint would have revealed a high quality of judicial discretion. Not only that, instead of washing the judicial ermine in the dishwater, he would have raised it to the peak of public approval.
I am at times abashed by the charge that the bar is in bad repute and does not enjoy the confidence and respect of the public. It is utter nonsense to contend that such a charge has any semblance of truth as to most lawyers. True, there are a few who defy the social conventions, that bind other people, and commit moral or other lapses that stigmatize the entire profession. The layman takes the measure of the lawyer by the conduct of those with whom he has social and business contacts. If he suffers an affront at the hands of a lawyer or has his estate or business mismanaged, overcharged or stolen by one or is made to feel that he is the victim of the chicanery or low impulses of a lawyer, he is prone to conclude that lawyers as a class are not worthy to be trusted.
Now I realize that this is an old fashioned approach to an old subject, but moral precepts do not fluctuate like fads in ladies apparel. "Thou shalt not steal" and "thou shalt not bear false witness" are just as *302 new as they were when Moses brought them down from the Mountain. I know of no one, not even the preacher or the teacher, that is more responsible for the moral and spiritual climate of his community than the lawyer. He needs it wholesome to raise a respectable family. In a democracy like ours correct human relations prevail only to the extent that all accept responsibility for good morals and good will. No one is entitled to respect from others that his conduct does not merit and it is rare that more is bestowed on him.
I offer these views in support of my concurrence with the opinion of Mr. Justice THOMAS.