175 So.2d 75 (1965)
Charles WRAINS, Sherwood A. Innis, Ralph Finno and Michael Galatka, Appellants,
v.
James W. ROSE, Appellee.
No. 4690.
District Court of Appeal of Florida. Second District.
May 14, 1965.
*76 James E. Edwards, C. Shelby Dale, William J. Lee, Fort Lauderdale, for appellants.
Ray Sandstrom of Sandstrom & Hodge, Fort Lauderdale, for appellee.
WHITE, Judge.
The defendants appeal a final judgment for plaintiff entered on a jury verdict in an action for unlawful arrest, false imprisonment, malicious prosecution and assault and battery. The plaintiff was arrested by the defendant officers of the city of Fort Lauderdale Police Department while he was in a phone booth in the city of Dania. When arrested the plaintiff was communicating by telephone with his sister. The plaintiff asserted that he was unlawfully frisked, shoved, jerked and pushed around before being taken to the Fort Lauderdale Police Department where he was charged with vagrancy under a Fort Lauderdale city ordinance and caused to be incarcerated for some 40 hours; that the defendant officers placed a "hold order" against him so that he was not permitted to be bonded out at the time of his arrest.
The plaintiff further charged that he was forced to empty his pockets which contained $7.00 in change, a bank deposit slip in the amount of $2,500.00 and his car keys before he was ordered to "take his pants off." The defendants conceded that they inventoried plaintiff's property but denied that they ordered him to strip. They asserted that plaintiff undressed voluntarily without any cause to do so. The officers denied malice in the course of events and further denied committing any assault and battery upon the plaintiff. At the close of the trial the jury found against the defendants and awarded the plaintiff $1,000.00 compensatory damages and $4,000.00 punitive damages. Motion for a new trial was denied.
On appeal the defendants assign error asserting that the jury could not competently resolve the conflicts in favor of the plaintiff  primarily because the plaintiff has an unfavorable record of prior convictions and hatred towards law officers. Secondly, having denied committing any assault and battery upon the plaintiff, the defendants urge that since the plaintiff received no physical injury while under detention and since he was bonded out 40 hours after his arrest the aggregate of compensatory and punitive damages was excessive. The defendants urge in their last point on appeal that error was committed in assessing punitive damages against the four defendants jointly and severally without distinction as to their respective financial conditions. The points will be discussed seriatim.
The initial question concerns whether or not the verdict is supported by the evidence. There were conflicts of testimony *77 on the issues presented not only as between the parties but also as among the defendants themselves. Defendant Innis testified that he was aware that the Fort Lauderdale Police were without authority to arrest for violation of a Fort Lauderdale City Ordinance in some other city when not incident to hot pursuit. He stated that no warrant was issued for plaintiff's arrest and that no offense was committed in his presence. The officers denied making an arrest in the City of Dania. They asserted at trial that they merely offered plaintiff transportation and that plaintiff accepted the offer and voluntarily entered the police car. Plaintiff's own vehicle was left parked near the telephone booth. According to the defendants' version the plaintiff was not "arrested" until after he arrived at the police station.
The plaintiff's sister, Dixie Rose Sawyer, a school teacher, stated on deposition that she was talking to her brother on the telephone:
"And all of a sudden I heard somebody saying something, `Give him the shake-down.' And I started saying, `James, James, James.' And James didn't answer. After I said it about ten times, I said, `James, what is going on?' And then some one took the telephone and identified themselves as a Fort Lauderdale police officer, and said  I don't remember whether he told me his name or not, but I know he said he was a Fort Lauderdale police officer and that they were arresting my brother. And I said, `For what?' And he said  `No.' I said, `For what?' And he says, `We are arresting your brother.' And I said, `For what?' And he says  I think he told me if I wanted to find out more about it, to call the police station the next morning, or to call the police station some time.
"And I said, `Where is that located? I am coming there right now.' And he said, `Lady,' or `Ma'am,' or something, `you needn't come here. We are taking your brother to jail right now.' And bang went the receiver. And that's the last I heard until I called the police station the next morning."
The jury, however, heard her testify first hand and her testimony in open court apparently was believed. She testified:
"* * * I said, `Who is this?' And he said, `The Fort Lauderdale Police.' He identified himself as a Fort Lauderdale Police Officer, and I said, `Well, could you please tell me what's going on?' and he said, `We are arresting your brother.' And I said, `For what?' And he said, `If you want to know more about it you can call the Fort Lauderdale police station,' and I said, `Where is this I am talking right now?' And he said, `You need not call, we are bringing your brother to jail right now.' And he hung up and I did not know where he was nor why he was arrested.
"Q. He had been arrested when you came in contact with the Fort Lauderdale police?
"A. Yes. I don't know whether the officer told me I could call that night or the next morning. I think he told me I could call that morning, and I could find out whatever I wanted to know. I know I did call the next morning. I asked him what they were holding him for and he said for vagrancy, and I said, `Excuse me sir, would you please explain what he was arrested for, I don't know the situation.' And I said, `Could I speak to my brother on the phone?' And he said, `No.' And I said, `If I come to the jail could I see him?' And he said, `No.' And I said, `I didn't know of anyone being in jail before and I thought it was very irregular that you couldn't speak to them, or couldn't see him or couldn't bond him out.' And I said, `When can he get out?' And he said, `Two or three weeks.'"
*78 The plaintiff was charged as follows:
"On the 23d day of November, 1961 did conduct himself as a vagrant by wandering from place to place without means of support, within the corporate limits of Fort Lauderdale in violation of Section 28.53 of the Code of Ordinances of said City."
A court reporter testified that defendants Wrains, Innis and Finno appeared as witnesses in support of the charge and that during the trial the court directed a verdict of acquittal for James Rose, the plaintiff herein.
There were unwritten aspects of the trial that apparently had some bearing on its outcome. The jury heard the testimony of the witnesses and the tone of their answers and observed their demeanor. These and other elements affect the credibility to be accorded to testimony. Plaintiff's witnesses for the most part were firm and consistent. The same cannot be said of the testimony of the various officers whose statements were at times evasive with frontal attacks on the character of the plaintiff. The jury was in a better position to draw inferences and arrive at factual conclusions than are we who are confined in our consideration to the cold transcript. Cf. Cole v. Cole, Fla.App. 1961, 130 So.2d 126. If we were to premise a reversal on the legal insufficiency of the evidence it would be an appreciable and unwarranted encroachment on the domain of the jury.
It is often reiterated that if there is room for difference between reasonable men as to the existence of a material fact sought to be established, or as to a material inference which reasonably might be drawn from established facts, the case should be submitted to the jury. Deese v. White Belt Dairy Farms, Inc., Fla.App. 1964, 160 So.2d 543, 545. The factual issues, conflicts of testimony and evidentiary inferences were submitted to the jury and were competently resolved against the defendants. This court may not substitute its judgment on issues of fact as found by a jury unless those findings are manifestly unreasonable and clearly against the weight of the evidence. Salter v. Knowles, Fla. App. 1957, 97 So.2d 138; Bruggisser v. Bruggisser, Fla.App. 1961, 133 So.2d 654; Williams v. Scott, Fla.App. 1963, 153 So.2d 18, 21. Moreover, where the presiding judge has denied motion for a new trial the presumption in favor of the correctness of the verdict is strengthened. Dean v. Mayes, 1962, 274 Ala. 88, 145 So.2d 439. For the reasons discussed we cannot conclude that, as a matter of law, the verdict did not "square with right and justice", or that the jury could not bring in a plaintiff's verdict. Florida Publishing Co. v. Copeland, Fla. 1956, 89 So.2d 18.
Although not pointedly raised by the defendants, the question implicitly arises as to the propriety of punitive damages under the findings determined by the jury, viz., that plaintiff was unlawfully arrested and taken into custody by the defendants; that he was detained and searched against his will; that the defendants committed an assault and battery upon him while he was so detained; that he was a victim of malicious prosecution in that the defendants caused a charge to be lodged against him with malice and lack of probable cause; and, that all of the acts were done maliciously, willfully and wantonly.
A municipal officer who is an active tortfeasor may be personally liable for punitive damages. Fisher v. City of Miami, Fla.App. 1964, 160 So.2d 57. Generally punitive or exemplary damages are allowable over and above actual or compensatory damages for "malice, moral turpitude, wantonness, or the outrageousness of the tort." Dr. P. Phillips & Sons, Inc. v. Kilgore, 1943, 152 Fla. 578, 12 So.2d 465, 467; Rosenberg v. Ryder Leasing Inc., Fla. App. 1964, 168 So.2d 678. It is true that mere proof of an intentional tort does not ipso facto entitle the plaintiff to punitive damages "but there are some intentional torts, one of which is assault and battery, *79 where the doing of the act supplies the proof of malice." Bryson v. Swank, Fla. App. 1964, 166 So.2d 833, 834. See also Anderson v. Maddox, Fla. 1953, 65 So.2d 299, 301.
Although malice is an essential element in malicious prosecution, deliberate violence or oppression are not prerequisites for assessment of exemplary damages in cases purely in tort where the wrongful act is such as to imply malice, or when from great indifference to persons, property or rights of others malice is imputable to the wrongdoer. La Porte v. Associated Independents, Inc., Fla. 1964, 163 So.2d 267. In Webb's City, Inc., v. Hancur, Fla.App. 1962, 144 So.2d 319 plaintiff sought punitive damages for (1) false arrest, (2) false imprisonment, (3) assault and battery and (4) malicious prosecution. The defendant claimed inter alia that punitive damages could not have been legally awarded under the instructions as given. This court held:
"The instruction in the instant case, although it omitted reference to malicious prosecution, nevertheless drew the attention of the jury to the evidence as a whole by telling the jury that they might `assess exemplary or punitive damages against the defendant, such damages to be dependent upon the circumstances of this case.' * * * The jury could have found punitive damages on all four counts or on any one." (emphasis supplied)
In Farish v. Smoot, Fla. 1952, 58 So.2d 534 the plaintiff sought punitive damages for false arrest. In affirming judgment for the plaintiff, the Florida Supreme Court, speaking through Justice Sebring stated:
"It is next contended by the appellant that a judgment for punitive or exemplary damages cannot stand for the reason that personal malice on the part of the municipal judge toward the person arrested was not shown.
"The answer to this contention is that malice, as used in cases which allow recovery for exemplary damages where the imprisonment is actuated by malice, does not necessarily mean anger or a malevolent or vindictive feeling toward the plaintiff. A wrongful act without reasonable excuse is malicious within the legal meaning of the term." (emphasis supplied)
Defendants next assert that the verdict of $4,000.00 total punitive damages is shockingly excessive. We cannot agree. Here there were four individual defendants, each found to have shared in the wrongs committed. Courts of this state have frequently held that punitive damages are peculiarly within the discretion of the jury as to the degree of punishment to be inflicted, dependent upon the circumstances of each case as well as upon the "degree of malice, wantonness, oppression, or outrage found by the jury from the evidence." Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214, 221. No abuse of the jury's prerogative has been shown.
The last question presented concerns whether or not punitive damages can be assessed against four defendants jointly and severally without being apportioned according to their respective financial conditions. Defendants assert that evidence should have been offered as to their individual ability to pay. This issue has since been resolved against the defendants. See Kellenberger v. Widener, infra.
Defendants cite Sauer v. Sauer, Fla.App. 1961, 128 So.2d 761 as authority for apportioning punitive damages. We do not understand the Sauer case as standing for the proposition that punitive damages must be apportioned among co-defendants since the pertinent question was not there raised. Under the circumstances the defendants were joint tortfeasors. Malone v. Howell, 1939, 140 Fla. 693, 192 So. 224. As to such torts the injured party may elect to proceed *80 against any or all of the joint tortfeasors and the courts will not attempt to apportion damages. Sands v. Wilson, 1939, 140 Fla. 18, 191 So. 21.
Since the filing of appellants' main brief, Judge Shannon who also sat on the Sauer case, wrote the opinion in Kellenberger v. Widener, Fla.App. 1964, 159 So.2d 267 holding that as to those defendants responsible for the particular act for which punitive damages are recoverable, the verdict must be in one sum.[1] Of course, where the defendants are charged with separate and distinct acts, punitive damages may still be prorated as to each defendant for his particular act. That case further held that it would be error for plaintiff to present evidence of the wealth of one defendant where the action had been brought against the defendants jointly since consideration of individual wealth of one or more defendants could result in an unjust burden on defendants less able to pay.
The Kellenberger case, however, is not directly in point. That case concerns a plaintiff attempting to introduce evidence of the financial ability of one of several defendants to pay punitive damages. Here it is the defendants who are attempting to interject lack of ability to pay punitive damages where the plaintiff did not introduce any affirmative evidence as to financial standing. If, as defendants submit, it is a well known fact that policemen are not highly paid, such knowledge may be attributed to the jury.
Reversible error not having been shown, the judgment appealed is accordingly affirmed.
Affirmed.
SMITH, C.J., and TROWBRIDGE, C. PFEIFFER, Associate Judge, concur.
NOTES
[1] The problem was also recently discussed by the First District Court of Appeal in Spencer Ladd's Inc. v. Lehman, Fla.App. 1964, 167 So.2d 731, 735-738 in which that court reached a conclusion divergent from that in Kellenberger v. Widener, supra.