## CARMICHAEL v. WILLIAMS.
No. 7419.

Circuit Court, Lake County.

March 8, 1971.

C. John Coniglio, Wildwood, for the plaintiff.

James O. Driscoll and T. G. LaGrone, both of Orlando, for the defendant.

W. TROY HALL, Jr., Circuit Judge.

Plaintiff filed suit against defendant for the wrongful death of his minor son.

In his second amended complaint plaintiff alleges that defendant was guilty of negligent conduct toward his minor decedent who was, at the time of his death, a licensee in defendant's house. The gravamen of plaintiff's second amended complaint is that the defendant negligently left a loaded shotgun in his house and that a minor, one Stephen Clifford Held, age 13, who was playing in defendant's house, picked up the shotgun and while playfully pointing it at the plaintiff's decedent discharged it, causing the decedent's death. Plaintiff further asserted that defendant had actual knowledge that children played on the premises.

Defendant answered, denying negligence on his part, and asserting contributory negligence on the part of the decedent, the plaintiff

and the plaintiff's wife, in failing to supervise their minor child, and assumption of risk on the decedent's and plaintiff's part. Defendant further affirmatively asserts that he did not stand in loco parentis to the minor, Stephen Held, and is not liable for any act or omissions to act of that minor.

This cause came on for hearing, on the defendant's motion for a summary judgment. At that time the court ordered the parties to submit their briefs in support of their positions. These briefs have been submitted. The court has reviewed the affidavits, evidence and arguments contained in the briefs and has read all cases and authorities cited by the parties in support of their positions.

Based upon the entire record and file in this case, the court has jurisdiction over the parties and the subject matter of this suit. In addition, the court, for the reasons herein contained, has now determined that the defendant is entitled to a summary judgment as a matter of law.

The plaintiff's theory of the case is that a shotgun is a dangerous instrument and that it was negligence on the defendant's part to allow such a condition to exist upon his premises when he knew or should have known that *defendant's* minor son and *other* children had been playing with the gun. Plaintiff also asserts that defendant was negligent in not supervising defendant's minor son.

Plaintiff has not provided the court with any cases or authorities pertaining to the liability of a landowner under the facts and circumstances asserted in the second amended complaint. Plaintiff does cite Humphrys v. Jarrell, 104 So.2d 404, for the proposition that the party moving for a summary judgment has the burden of proving lack of a genuine issue of material fact.

Defendant's theory of the case is that —

A summary judgment should be granted when it appears that there is no genuine issue as to any material fact and that one party or the other is entitled to the judgment, Anderson v. Maddox, 65 So.2d 299.

As to a licensee, a landowner owes only the duty to refrain from wanton negligence or wilful misconduct and to warn of known dangers which are latent or concealed perils not ordinarily recognizable by the licensee. Goldberg v. Straus, 45 So.2d 883; McNulty v. Hurley, 97 So.2d 185.

There is no duty on the part of an owner of land for negligent conduct of a minor third party when such landowner does not stand in the position of loco parentis to such minor. Weigl v. Ombres, 106 So.2d 614.

Plaintiff's counsel argued that the question to be determined by the jury in this case is whether or not the defendant had actual knowledge that children played on the defendant's premises, wherein defendant's loaded shotgun was placed and located.

Defendant's counsel argued (1) that there was no evidence to show any actual knowledge on defendant's part of plaintiff's decedent's presence on his premises, (2) that plaintiff's decedent was a licensee on his premises and there was no allegation of or evidence to show that defendant was guilty of wanton negligence or wilful misconduct toward plaintiff's decedent, (3) that the shotgun was a patently discernable object on his property and there was no duty on his part for the conduct of some third party's negligence and intentional act of picking the shotgun up and shooting the plaintiff's decedent, and (4) that he did not stand in loco parentis with respect to the minor, Stephen Held, and hence he did not have any duty as might be imposed upon him had he been in that position.

## Findings of fact

Based upon the admitted pleadings, affidavits and the entire record the court makes the following findings of fact pertinent to the issues in the case —

That the defendant is the owner of real property in Lake County, to-wit: [legal description omitted]

That on August 3, 1964, the plaintiff's deceased, Weyman Liston Carmichael, III, was present upon the above premises without the defendant's knowledge.

That on August 3, 1964 the minor, Stephen Held, was present upon the above premises without the defendant's knowledge.

That the minor, Stephen Held, shot the plaintiff's decedent, killing him with a shotgun owned by the defendant while on defendant's premises on August 3, 1964.

That the defendant was not present at the time nor on the above premises on August 3, 1964 when the minor, Stephen Held, shot and killed plaintiff's decedent with defendant's shotgun.

## Conclusions of law

That the defendant did not stand in the relationship of loco parentis with the minor, Stephen Held, on August 3, 1964.

That, at the most, the plaintiff's decedent was a licensee on the defendant's premises on August 3, 1964, as was the minor, Stephen Held.

That the defendant was not guilty of wanton negligence or wilful misconduct toward plaintiff's decedent on August 3, 1964, nor was there a breach of any duty to warn by defendant at that time and place.

That there is no genuine issue on any material fact and defendant is entitled to a summary judgment as a matter of law.

*Opinion*

Initially determinative of the question presented to this court in the instant case is the status of the minor, Stephen Held, with the defendant at the time of the unfortunate shooting of plaintiff's decedent. In this regard, if there were some breach of duty on the part of the defendant at the time of the shooting, such as is imposed on a parent in regard to torts of his child, a different result in this type of case might occur. See: Gissen v. Goodwill, 80 So.2d 701. In this case there is not the slightest inference of such a relationship between Stephen Held and the defendant. On this point the case of Weigl v. Ombres, 106 So.2d 614, appears controlling to this court. In *Weigl,* the Court of Appeal Second District found that a summary judgment was properly entered for a defendant on the following facts —

> It appears from the record that the defendant, his wife, and three children, all minors, lived in Palm Beach. His wife's sister had previously secured a divorce from her husband, in which she was given custoday of the boy, Tommy, and his father was ordered to pay $100 per month for his support. Insofar as it is germane to the issues, the minor and his mother had lived in Philadelphia, Pennsylvania, during the winter of 1955 and 1956. His mother, in March or April of 1956, came to Palm Beach and was invited to stay at the home of the defendant. Her son, Tommy, was invited by either the defendant or his wife to also visit the defendant during the summer of 1956. Having finished school in Philadelphia he came to Palm Beach sometime in July and he and his mother were going back to Philadelphia sometime in September for the minor to reenter school. At the time of the accident Glenn Weigl, a minor, and Tommy Cook, a minor, were playing in the defendant's home. Mrs. Cook, being upstairs, and the defendant and his entire family were away from Palm Beach on vacation. Under these circumstances Tommy obtained a .22 target pistol from the defendant's room and without provocation shot Glenn.

In determining that the defendant did not stand in the relationship of loco parentis to the minor the court in *Weigl* states, page 615 —

> . . . In looking to the definition of loco parentis, we find in United States v. McMaster, 5 Cir., 1949 174 F.2d 257, 259, the following:
>
>> "* * * That sense is defined in Black's Law Dictionary: 'In the place of a parent; charged factitiously with a parent's rights,

duties, and responsibilities.' 42 C.J.S., page 489, adds: 'more specifically, the relationship which a person assumes toward a child not his own, holding the child out to the world as a member of his family toward whom he owes the discharge of parental duties' * * *"

42 C.J.S., page 489 further states:

"* * * It has been said that the accepted definition of a person 'in loco parentis' is one who means to put himself in the situation of a lawful father to the child, with reference to the office and duty of making provision for the child; one assuming the parental character and discharging the parental duties. It has been held that the assumption of the relationship is a question of intention. * * *"

The court then concluded that it was not necessary to pass upon the defendant's alleged act of negligence.

Applying the test of *Weigl* to the instant case it is clear that no such relationship exists between the defendant and the minor, Stephen Held.

Turning to the question of negligence raised in the instant case, the *Weigl* case seems to this court to have, by implication, if not expressly, held that it is not negligent to maintain a loaded gun in one's home.

As in *Weigl,* it is probably not necessary for this court to go further in this case than to determine the question of the minor, Stephen Held's, relationship to the defendant, requiring a summary judgment for the defendant. However, in the attempt to make available to the public and the Bar the benefit of this court's research and opinion as concerns the keeping of firearms in a person's dwelling, the court has chosen to write an opinion on this point with the hope that it may be helpful in the future in similar cases.

In the instant case it is doubtful that the plaintiff's decedent was on the premises of the defendant on invitation. The affidavits of defendant in fact establish the contrary. Plaintiff's pleadings and conclusions contained in the affidavits, if taken, do establish that the decedent was a social guest on the land by invitation of defendant's son. Hence, the decedent will be considered a licensee for the purpose of this opinion. We must, therefore, examine the law of Florida as to the duty which arises between a landowner and a licensee. McNulty v. Hurley, 97 So.2d 185, expresses the law of Florida that —

The duty owed a licensee is to refrain from *wanton* negligence or *wilful* misconduct which would injure him, or to refrain from intentionally exposing him to danger. City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644. There may be a further duty to the licensee to

warn him of a defect or condition known to the owner or occupant to be dangerous *when such danger is not open to ordinary observation by the licensee.* Goldberg v. Straus, Fla. 1950, 45 So.2d 883; 65 C.J.S. Negligence §35 g; Prosser, Torts, §77, p. 450; Restatement, Torts, §342, Comment d. (Italics added.)

Applying the law of *McNulty,* it is noteworthy that in the instant case plaintiff does not allege nor does the proof show any act on defendant's part that could be characterized as wanton negligence or wilful misconduct. Nor is there, nor can there by any contention made that the shotgun was not a patent object if, in fact, one were to characterize the gun as a condition of the premises. This court also fails to see how defendant, under the circumstances of this case could be held guilty of simple negligence. To do so it would be to reverse every case in the state of Florida concerning the duty of a landowner to a licensee and same would do violence to the general policy of this state relative to firearms, which policy may be found in the constitutional provision that the people have the right to bear arms. Persuasive to this court in the latter regard is the opinion of Mr. Justice Dawson in Parman v. Lemmon, 244 P. 227, 119 Kansas 323, which was at the first dissent and later was adopted as the majority opinion, and is quoted almost in entirety by Justice McGee of the Supreme Court of New Mexico in Lopez v. Chewiwie, 186 P. 2d 512, as follows —

"The fathers of our republic believed that a well-regulated militia was necessary to the security of a free state, and that the right of the people to keep and bear arms should never be infringed. Have we ceased to believe that doctrine? I refer to this, not because it is a provision of the federal constitution and restricts the power of Congress over this subject, but because it is a basic principle of statecraft of deep concern to all who are clothed with authority and who feel their responsibility to hand on undiminished to future generations those liberties which are our proud American heritage."

As stated in *Lopez* —

We think the better rule is that absent knowledge on the part of the parent that a child of the age of the one involved here is indiscreet or reckless in the handling of firearms, that the mere keeping of a loaded gun on the premises and leaving the boy there alone, does not make the parent liable for torts committed by the minor. See Hagerty v. Powers, 66 Cal. 368, 5 P. 622, 56 Am.Rep. 101; Lacker v. Ewald, 11 Ohio Dec. 337; Swanson v. Crandall, 2 Pa. Super. 85; Frellesen v. Colburn, 156 Misc. 254, 281 N.Y.S. 471, and Parman v. Lemmon, supra.

There being in this court's opinion no genuine issue on any material fact, it is the opinion of this court that defendant is entitled to a summary judgment as a matter of law. Anderson v. Maddox, 65 So.2d 299.

It is, therefore, upon consideration, ordered and adjudged that the plaintiff, Weyman L. Carmichael, Jr., take nothing by this action and that the defendant, Hubert D. Williams, go hence without day.