457 So.2d 1351 (1984)
Lorean S. EVANS; Henry McDermott; Lucille McDermott; and Cheryl Lee Harrison, Appellants,
v.
George FIRESTONE, As Secretary of State of Florida; and Reason '84: the Committee for Citizens Rights in Civil Actions, a Political Action Committee, Appellees.
No. 65898.
Supreme Court of Florida.
Opinions October 3, 1984.
Opinions October 11, 1984.
*1352 Barry Richard of Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, and Arthur England of Fine, Jacobson, Block, England, Klein, Colan & Simon, Miami, for appellants.
Jim Smith, Atty. Gen., Mitchell D. Franks, Chief Trial Counsel and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, Chesterfield Smith, Julian Clarkson and Lynn M. Dannheisser of Holland & Knight, Tallahassee, Robert L. Shevin and James A. Minix of Sparber, Shevin, Shapo & Heilbronner, Miami, and Donald W. Weidner, Reason '84: The Committee for Citizen's Rights, Jacksonville, for appellees.
Karen A. Gievers of Anderson, Moss, Russo & Gievers, Miami, amicus curiae for Florida Consumers Federation, Inc.
PER CURIAM.
The declaratory judgment entered in this cause September 14, 1984 by the Honorable Ben C. Willis, Circuit Judge for the Second Judicial Circuit of Florida is hereby reversed and proposed amendment nine, titled Citizen's Rights in Civil Actions, is stricken from the November ballot. An opinion setting forth our reasons for this decision will issue at a later date.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
PER CURIAM.
This cause is before the Court for review of a declaratory judgment rendered September 14, 1984, in which the Honorable Ben C. Willis found the proposed amendment to the Florida Constitution, Amendment 9: Citizen's Rights in Civil Actions, and its ballot summary were constitutionally valid. Appellants filed an appeal to the First District Court of Appeal which, upon motion by both parties, certified the question to this Court as being of great public importance, without passing on the merits. We have jurisdiction pursuant to article V, section 3(b)(5), Florida Constitution.
*1353 In the circuit court, appellants challenged the validity of appellee Firestone's placing on the November ballot the following amendment:
CITIZEN'S RIGHTS IN CIVIL ACTIONS
In civil actions: a) no party can be found liable for payment of damages in excess of his/her percentage of liability; b) the Court shall grant a summary judgment on motion of any party, when the Court finds no genuine dispute exists concerning the material facts of the case; c) noneconomic damages such as pain and suffering, mental anguish, loss of consortium, and loss of capacity for the enjoyment of life shall not be awarded in excess of $100,000 against any party.
which would actually appear on the ballot in guise of the following title and summary, pursuant to section 101.161, Florida Statutes (1983):
CITIZEN'S RIGHTS IN CIVIL ACTIONS
Amendment establishes citizen's rights in civil actions: provides a party in a lawsuit shall not be required to pay more damages than the jury found him/her responsible for personally; requires courts to dispose of lawsuits when no dispute exists over the material facts thus avoiding unnecessary costs; and allows full recovery of all actual expenses such as lost wages, accident costs, medical bills, etc., but limits non-economic damages to a maximum of $100,000.
Appellants' challenge alleged that the amendment violates the one subject limitation imposed in article XI, section 3, Florida Constitution and that the title and summary are deceptive and ambiguous, thus failing to give the notice required by section 101.161, Florida Statutes (1983). Additionally, appellants raised a federal constitutional issue, claiming that the amendment's facial invalidity violated the due process clause of the fourteenth amendment of the federal constitution.
Judge Willis held that the amendment embraced only one subject and matter directly connected thereto and that the title and summary were neither ambiguous nor misleading. He declined to reach the due process issue, finding it not to be ripe for adjudication at that point in the amendment process.
After this Court accepted jurisdiction, the cause was fully briefed and orally argued. Our order striking the amendment from the ballot issued October 3, 1984. This opinion follows to explain our earlier decision.
We find the amendment clearly and conclusively defective on both grounds considered by the circuit court: it embraces more than one subject, and the ballot summary fails to satisfy the notice requirements of Florida Statute 101.161 as construed in Askew v. Firestone, 421 So.2d 151 (Fla. 1982). As these holdings dispose of the case, we do not reach the due process claims raised in appellants' brief.

I. Single-Subject Requirement.
The power of the citizens of the state of Florida to amend their state constitution by initiative, set forth in article XI, section 3, Florida Constitution, is subject to only one rule of restraint  that the "revision or amendment shall embrace but one subject and matter directly connected therewith." (Emphasis supplied.) Proponents of the amendment have identified the single subject involved as "citizen's right in civil actions" and distinguished this amendment from the multi-subject amendment which was stricken in Fine v. Firestone, 448 So.2d 984 (Fla. 1984), by pointing out that amendment 9 is self-contained and would create no conflict with any other existing constitutional provision.
Fine stands for the axiomatic proposition that enfolding disparate subjects within the cloak of a broad generality does not satisfy the single-subject requirement. There we held that the single subject "revenue" encompassed at least three subjects. Similarly "citizen's rights in civil actions" is so broad as to fail to delineate the subject or subjects of this amendment in any meaningful *1354 way. As in Fine, we must look to the functional effect of amendment 9 to determine whether it satisfies the single subject requirement.
In Fine, we receded from earlier language indicating that conflict with multiple sections of the existing constitution has no place in determining multiplicity of subject in initiative amendments, 448 So.2d at 990 (expressly receding from Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978)), and found Citizen's Choice defective in part because of its multiple conflicts. We did not, however, establish that as the exclusive test for the single-subject requirement. In Fine we also discussed the primary and fundamental concern of the one-subject restriction  the prevention of logrolling. Where separate provisions of a proposed amendment are an "aggregation of dissimilar provisions [designed] to attract support of diverse groups to assure its passage," 448 So.2d at 988, the defect is not cured by either application of an over-broad subject title or by virtue of being self-contained.
The test, as set forth in Fine, is functional and not locational, and where a proposed amendment changes more than one government function, it is clearly multi-subject. In Fine, we found multiplicity of subject matter because the proposed amendment would have affected several legislative functions. The proposed amendment now before us affects the function of the legislative and the judicial branches of government. Provisions a and c of the amendment, which limit a defendant's liability, are substantive in nature and therefore perform an essentially legislative function. On the other hand, provision b, elevating the summary judgment rule currently contained in Florida Rule of Civil Procedure 1.510, is procedural and embodies a function of the judiciary. We recognize that all power for each branch of government comes from the people and that the citizens of the state have retained the right to broaden or to restrict that power by initiative amendment. But where such an initiative performs the functions of different branches of government, it clearly fails the functional test for the single-subject limitation the people have incorporated into article XI, section 3, Florida Constitution.
Nor can we hold that the summary judgment provision is "directly connected" to the other two provisions. The general effect of provisions a and c is to limit the amount of damages for which any defendant will be liable. A summary judgment is a procedural mechanism whereby liability and damages may be adjudicated when material facts are undisputed. The existence of this mechanism in no way limits the generalized concepts of liability or damages. Furthermore, the provision would reach far beyond those civil actions in which liability and damages are at issue, e.g. declaratory judgments, mortgage foreclosures, dissolution proceedings. The ballot summary reveals that the purpose for including subsection b is that it would, arguably, lower litigation costs. Those costs, however, are qualitatively different from liability for damages and cannot be held to be "directly connected" for purposes of curing a "single subject" defect.
We hold therefore, that "Citizen's Rights in Civil Actions" does not delineate a single subject such that all three provisions are directly connected therewith. Within the broad generality of the amendment title we find provisions which effect both legislative and judicial functions.

II. Legal Sufficiency of the Ballot Summary
Section 101.161, Florida Statutes (1983) provides, in pertinent part:
Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot... . The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. The ballot title shall consist of a *1355 caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
In Askew v. Firestone, 421 So.2d 151 (Fla. 1982), we construed this provision, holding that "the law required ... that the ballot be fair and advise the voter sufficiently to enable him intelligently to cast his ballot." Id. at 155 (quoting Hill v. Milander, 72 So.2d 796, 798 (Fla. 1954)). In Askew we held clearly and conclusively defective a ballot summary which represented an amendment as granting citizens greater protection against conflicts of interest in government without revealing that it also removed an established constitutional protection. Appellants contend that the ballot summary now before us is similarly misleading. We agree.
The summary states that it "establishes" citizen's rights in civil actions. This is clearly inaccurate as applied to provision b, relating to summary judgment. This provision has long been established in Florida. The effect of the amendment is to elevate this procedural rule to the status of a constitutional right, protected in the same manner and to the same degree as are other constitutional rights. We do not pass on the merits of the effect nor do we question the citizens' right to do exactly this. We do find, however, that the voter must be told clearly and unambiguously that this is what the amendment does.
The summary for that same subsection, after describing the legal effect of summary judgment, ends with the editorial comment, "thus avoiding unnecessary costs." We note in passing that the validity of this statement was hotly contested. But whether it be accurate or not, no logical explanation was given of how a constitutional summary judgment rule would be more effective in avoiding costs than is the existing summary judgment rule. Moreover, the ballot summary is no place for subjective evaluation of special impact. The ballot summary should tell the voter the legal effect of the amendment, and no more. The political motivation behind a given change must be propounded outside the voting booth.
Even more disturbing, and more obviously analogous to Askew, is the material recasting of provision c from language of limitation in the amendment to language of affirmation in the ballot summary. Nothing in the amendment "establishes" the citizen's right to "full recovery of all actual expenses such as lost wages, accident costs, medical bills, etc." These damages are neither enumerated nor alluded to in the language of the amendment. To the extent a citizen's right is established in the amendment, it is the right to have his liability for "noneconomic damages such as pain and suffering, mental anguish, loss of consortium, and loss of capacity for enjoyment of life" capped at $100,000.
This limitation is clearly the chief purpose of provision c within the meaning of section 101.161, Florida Statutes. Just as it is clearly misleading to reveal only one half of a constitutional "trade off" in the ballot summary, Askew, 421 So.2d at 157 (Ehrlich, J., concurring), so is it fatally misleading to imply a constitutional trade-off where none is, in fact, contemplated. The only constitutional protection proposed here is for the benefit of the defendant in civil actions. No constitutional protection is added to the rights of the plaintiff. Again, this is not a criticism of the merits of the amendment nor a diminution of the citizens' right to afford this protection to defendants. We merely stand firm on the fundamental right of the voter to be given fair notice so that he or she may make an informed decision on the merits of the provision.
Because of the ballot summary here was clearly and conclusively defective and because the amendment embraced more than one subject, we have ordered the amendment stricken from the ballot.
NO MOTION FOR REHEARING WILL BE ALLOWED.
BOYD, C.J., and ADKINS and ALDERMAN, JJ., concur.
*1356 OVERTON, J., concurs with an opinion.
McDONALD, J., concurs with an opinion in which EHRLICH J., concurs.
EHRLICH and SHAW, JJ., concur specially with an opinion.
OVERTON, Justice, concurring.
I write this concurring opinion to emphasize my strong belief that the ballot language in the instant case is clearly misleading. I believe, however, that the problem of misleading ballot language on future proposals can and should be corrected by the legislature. I also wish to emphasize that the initiative petition process, when used properly, is a viable alternative means to amend our constitution. Contrary to some assertions, I find that our decisions in this area are consistent.
It would be easy, from a political standpoint, to ignore the one-subject restraint in the constitution, which is not fully understood by the public, and take the populist view that all initiative petitions should be allowed to remain on the ballot for the vote of the people. To do so, however, would not only violate our judicial oath of office but would also place in jeopardy the right of the people to be knowledgeable about how the proposed amendment would affect the constitution.
It is totally incomprehensible to me that proponents of a constitutional amendment can freely admit that they do not know how important parts of the proposal should be applied and that it should be left to the discretion of this Court to make this determination. Such admissions were made in Fine v. Firestone, 448 So.2d 984 (Fla. 1984), by the Citizens' Choice proponents, who did not know which constitutional provisions were amended by the proposal and left to this Court the responsibility of identifying and redrafting those provisions by judicial construction after the initiative proposal's adoption by the people. In the present case, the proponents of Reason '84 admitted in oral argument that they do not know whether the $100,000 limitation on non-economic damages, as contained in the proposal, applies for each individual litigant or whether that limitation applies to one incident, regardless of how many individuals are involved. They want to leave this important choice regarding the application of the proposal to the total discretion of this Court.
The ballot summary language compounds the amendment's problems by implying that this proposed constitutional provision "establishes" certain rights that previously did not exist in civil lawsuits. The ballot summary language conveniently leaves out any reference to existing rights that are "changed" by the proposed constitutional provision. This may meet advertising criteria for the marketing of a product, but it cannot be tolerated for constitutional ballot language that is intended to inform the voter of what changes in the constitution are being proposed. We emphatically stated in Askew v. Firestone, 421 So.2d 151, 155 (Fla. 1982), that the ballot language must be objective and fair and must sufficiently advise the voter so as to permit a knowledgeable decision on the merits of the proposal. In my view, the ballot language in the instant case appears to have been intentionally drawn to create an erroneous perception of the effect of this constitutional proposal. I am at a loss to understand why the proponents of this amendment did not take heed of the Askew v. Firestone decision.
With regard to misleading ballot language, I again reiterate my comment in Askew v. Firestone that "the legislature and this Court should devise a process whereby misleading language can be challenged and corrected in sufficient time to allow a vote on the proposal." 421 So.2d at 157 (Overton, J., concurring specially). Devising such a process does not require a constitutional change but only necessitates a statutory enactment and possibly some court rule changes to allow for an expedited court proceeding. The state of Oregon has such a process which directs the attorney general to prepare a ballot summary that is "a concise and impartial statement of not more than 75 words of the chief purpose of the measure" for constitutional *1357 proposals from both the legislature and the initiative process. § 250.075, Or. Rev. Stat. (1983). The language can be challenged in the Supreme Court of Oregon whose role is to determine whether the language is "insufficient or unfair." See Zajonc v. Paulus, 292 Or. 19, 636 P.2d 417 (1981); Priestley v. Paulus, 287 Or. 141, 597 P.2d 829 (1979). If it so finds, that court has the authority to modify and correct the language to reflect the chief purpose of the proposal and then have the constitutional proposal properly presented to the people for their vote. See Zajonc. The problem of misleading ballot language which now results in the removal of a constitutional proposal from the ballot is correctable by legislative action and it should be accomplished at the next legislative session.
Further, I agree that the single-subject requirement has been violated in this case. The single-subject requirement serves two important functions. First, the requirement is intended to guard against "logrolling." See Fine v. Firestone, 448 So.2d at 989. Second, it directs the electorate's attention to only one functional addition or change to the constitution because, unlike other means for amending the constitution, the initiative process does not provide for a filtering mechanism for the drafting of a proposal through amendments, public debate, and legislative vote. This lack of input in the drafting of an initiative proposal is an important reason for the single-subject limitation. Id.
I conclude that our decisions in Weber v. Smathers, 338 So.2d 819 (Fla. 1976), Floridians Against Casino Takeover v. Let's Help Florida, 363 So.2d 337 (Fla. 1978), Fine v. Firestone, and the instant case are totally consistent in their application of the single-subject requirement. I recognize that our Floridians decision has caused confusion, but find that the result reached in that case is consistent with our other decisions interpreting the single-subject requirement.
In Weber, we approved as a single subject the ethics-in-government provision, which set forth the standards of conduct for governmental officials and employees, and concluded that it did not affect other constitutional provisions and was complete in itself. 338 So.2d at 822.
In Floridians, we approved as a single subject the legalization of casino gambling and determined that the provision for the distribution of tax revenue from such casinos was "directly connected" to the legalization of casino gambling. 363 So.2d at 340.
In Fine, we found that the Citizens' Choice amendment violated the single-subject requirement in that it substantially affected at least three distinct functions of government. Specifically, we found that the proposal limited (1) all tax revenue available for governmental operations, e.g., police, fire, health, education, and roads; (2) the operation and expansion of all governmental user-fee services, e.g., electric, water, gas, garbage collection, and transportation services, where the user pays for the services he receives; and (3) the funding of capital improvements through revenue bonds which are repaid from revenue generated by the capital improvements. 448 So.2d at 990-92. There was no dispute that the Citizens' Choice proposal substantially affected multiple provisions of the constitution.
In the instant case, we have found that the single-subject requirement has again been violated because, as explained in the majority opinion, this proposal affects two distinct functions of government.
In my view, this Court has set down understandable guidelines for the preparation of an initiative proposal that will meet the single-subject requirement. It is important to note that, although we have receded from certain language in Floridians, we have not retreated from our decision in Floridians determining that the casino gambling proposal meets the single-subject requirement, nor have we receded from our decision in Weber determining that the ethics-in-government proposal meets the single-subject requirement.
Hopefully, with these guidelines, and legislation that would allow the correction of *1358 misleading ballot language, this Court will not again be faced with the problem of having to remove a constitutional amendment from the ballot because of inartful drafting.
McDONALD, Justice, concurring.
I concur. In doing so I reiterate the views I expressed in my concurring opinion in Fine v. Firestone, 448 So.2d 984 (Fla. 1984). The most restrictive and most difficult method of amendment to the constitution is the initiative process. The one subject restriction placed in the initiative process is deliberate. Such amendments must be specific, well-defined in scope, and limited to one subject and matter directly connected therewith. The 1885 constitution became larded with special interest amendments; the framers of the 1968 constitution and the 1972 amendment sought to minimize the possibility of that recurring. It was neither envisioned nor contemplated that the initiative process would be used for multiple subject special interest legislation.
The amendment under consideration does not trespass the one subject matter rule to the same degree that the one in Fine did. The question, however, is not one of degree but whether or not the rule is violated. More than one subject is plainly evidenced in this amendment. Thwarted multiple subject matter legislation cannot be imposed in the guise of a constitutional amendment. Our state constitution needs to be constant, viable, and subject to limited modification.
I thought, when we announced Askew v. Firestone, 421 So.2d 151 (Fla. 1981), that proponents of constitutional amendments would fairly and accurately summarize them without any misleading comments. My faith was ill placed because this summary clearly is both misleading and uncertain of effect if enacted.[*] Because the ballot summary is defective, the amendment must be struck.
EHRLICH, J., concurs.
EHRLICH, Justice, specially concurring.
I concur in the second portion of the Court's opinion, designated "Legal Sufficiency of the Ballot Summary." I concur in the result only in the first portion, "Single-Subject Requirement," for the reasons I set forth in my concurring opinion in Fine.
The Supreme Court of Florida has a fundamental responsibility to determine the constitutionality of all laws enacted by the legislature as well as the constitutional sufficiency of amendments proposed to the constitution whether by the legislature or by citizens' initiative. The people of Florida have provided in their constitution that the legislature may propose the amendment of a section or revision of one or more articles of the whole constitution. From 1885 until 1968, the people of Florida did not permit amendment of the constitution by initiative. The 1968 revision of the constitution for the first time permitted the people themselves to propose amendment of a section of the constitution. In 1972, after this Court's opinion in Adams v. Gunter, 238 So.2d 824 (Fla. 1970), the constitution was amended to permit the revision or amendment by citizens' initiative of any portion or portions of the constitution, provided that, "any such revision or amendment shall embrace but one subject and matter directly connected to therewith." In short, the people of Florida, providently declining to reserve to themselves the unbridled freedom to propose constitutional amendments granted to the legislature, imposed a rule of restraint, limiting constitutional initiative proposals to the "one-subject" rule. Only the judiciary has the authority or the obligation to enforce this vital one-subject rule. Unless we fulfill our duty, the protection the people enacted *1359 in the one-subject rule is illusory and meaningless.
I say again, as I did in my concurring opinion in Askew, that the people ought to be able to vote on amendments to their constitution. But at the same time we dare not ignore our sworn duties as justices of the Supreme Court by closing our eyes to the obvious constitutional deficiencies in any proposed amendment to the constitution of Florida. Fine laid out in clear language the guidelines for determining compliance with the one-subject requirement. If drafters of an initiative petition nonetheless choose to violate the one-subject requirement, this Court has no alternative but to strike it from the ballot. To do less is to violate our oath of office and to betray the trust the people of Florida have reposed in this Court since the founding of this state.
A proposed constitutional amendment, whether proposed by the legislature or by the citizens' initiative, does not appear on the ballot. Instead, the legislature has provided in section 101.161, Florida Statutes, that the substance of the proposed amendment "shall be printed in clear and unambiguous language on the ballot" and that such substance shall be "an explanatory statement, not exceeding seventy-five words in length, of the chief purpose of the measure." (Emphasis supplied.) Again, it is the sole responsibility of the judiciary to make certain that the legislative mandate is followed.
The ballot summary now before us is nothing more than a blatant attempt to violate the unequivocal legislative mandate of the people of Florida that the explanatory statement set forth the chief purpose of the proposal in clear and unambiguous language. How easy it is to comply with the terms of section 101.161, Florida Statutes! For example, taking the proposal in question, compliance with the statute could be achieved as follows:
Provides that a party in a law suit shall not be required to pay more damages than a jury found him/her responsible for personally, places in the constitution the present rule that courts dispose of law suits where no dispute exists over the material facts, and limits non-economic damages to a maximum of $100,000
 all in fifty-three words.
However, the Court's ability to draft a constitutionally adequate summary does not itself confer the authority to place that summary on the ballot. The legislature, in spite of the strong recommendation of Justice Overton in a special concurrence to Askew (in which Justice McDonald and I joined), has not revisited section 101.161 to permit judicial correction of a defective summary. We must fulfill our responsibility, but we must not exceed the authority vested in us.
The drafters of the ballot summary in question have not simply set forth the chief purposes of the sections of the proposed amendment. Instead, the proponents have led the voters to believe that part b, dealing with the summary judgment, is something new which will reduce costs, whereas in actual fact the summary judgment provision has been a rule of court at least since the adoption of the Common Law Rules (a precursor of our current rules) in 1950. Any avoidance of costs attributable to this provision occurs whether or not the provision is adopted. All that part b would do is constitutionalize the current rule of procedure. The people of Florida have the right to put such a provision in the constitution, but they have demanded through legislative enactment to be told the chief purpose in clear and unambiguous language. This was not done.
Provision c is relatively simple. It places a cap of $100,000 on non-economic damages assessable against a party, and nothing more. There is not one word in provision c that deals with the recovery of actual expenses such as lost wages, accident costs, medical bills, etc., but the proponents would have the voters believe that the proposal deals with these items of damages. The proponents could just as easily  and with as little justification  have added that the proposal would allow filing for one's *1360 homestead exemption. Without impugning the drafters' motives, I fear it could be easily concluded that the summary of provision c was purposefully misleading. If Askew had been read and followed, this danger and this aspect of this litigation would have been avoided.
Again, we could have closed our eyes to these misrepresentations and violations of the statute. But in so doing we would have betrayed our oaths of office and our duties as justices of this Court. The popularity of a decision is not our lodestar. We would be undeserving of the public trust if ever we succumbed to any temptation to compromise our oaths of office and our duty to the people of Florida in order to gain the favor of a litigant, to appeal to the prevailing sentiment of the moment, or to try to curry favor with a special interest.
The decisions which determine compliance with the requirements of the constitution and the Florida Statutes rest with the proponents. This Court should not be charged with the inevitable result of their choice.
SHAW, Justice, specially concurring.
I am persuaded that the ballot summary of amendment nine is sufficiently misleading as to require removal of the amendment from the November 1984 ballot for the reasons articulated by the majority in Part II.
In Fine v. Firestone, 448 So.2d 984 (Fla. 1984) (Shaw, J., concurring in result only), I expressed concern that as a practical matter the function of government test would make the one-subject limitation of the constitution practically insurmountable. This test apparently has now been canonized in Part I of the majority opinion which states that "where a proposed amendment changes more than one function of government, it is clearly multi-subject." This overbroad statement is unnecessary, as was the similar statement in Fine. Even more seriously, there is nothing in the constitution to warrant this interpretation of the one-subject limitation.
In Fine, I stated that I saw the one-subject limitation as serving two purposes:
1. Ensuring that initiatives are sufficiently clear so that the reader, whether layman or judge, can understand what it purports to do and perceive its limits.
2. Ensuring that there is a logical and natural unity of purpose in the initiative so that a vote for or against the initiative is an unequivocal expression of approval or disapproval of the entire initiative.
Id. at 998. Applying this two prong test, I find that the initiative amendment itself passes muster. The amendment, unlike the ballot summary, is sufficiently clear so that a reader, whether layman or judge, can understand that it purports to limit defendant liability. In my view there is a natural and logical unity of purpose to the three provisions of the amendment so that a voter can unequivocally express either approval or disapproval of the entire initiative proposal. The obvious purpose of provisions (a) and (c) is to limit damages paid by defendants in civil suits. While provision (b) benefits both plaintiffs and defendants by raising to constitutional status the current rule on summary judgments, the rule is more frequently beneficial to defendants in summarily disposing of nuisance suits where a cause of action is unsupported by evidence. Food Fair Stores, Inc. v. Patty, 109 So.2d 5 (Fla. 1959); Connolly v. Sebeco, Inc., 89 So.2d 482 (Fla. 1956); Anderson v. Maddox, 65 So.2d 299 (Fla. 1953). At least in theory, this limits the exposure of defendants to time-consuming and expensive nuisance suits. Summary judgments also, again in theory, offer a speedy vindication of the defendant's reputation when the suit is in professional malpractice or negligence.[*] The fact that *1361 summary judgments may sometimes benefit plaintiffs offers insufficient grounds to strike the amendment from the ballot. The majority's analytical approach to the single-subject issue is hypertechnical and fails to show that the amendment is "clearly and conclusively defective." Askew v. Firestone, 421 So.2d 151, 154 (Fla. 1982).
In contrast to the amendment itself, the ballot summary is a misleading and inaccurate description of what the amendment purports to do. It is for this reason that I concur in striking the petition from the November ballot.
I concur with Justice McDonald's suggestion in his concurring opinion to consider placing the responsibility for preparing the ballot summary on a disinterested third party, such as the Secretary of State, thus removing the inclination to politicize the amendment in the ballot summary.
NOTES
[*] The thought occurs to me that to avoid this in the future the legislature might consider placing the responsibility of the preparation of a ballot summary on a third party, such as the Secretary of State.
[*] I recognize that because summary judgments bypass the constitutional right to a trial by jury they are strongly disfavored. Yost v. Miami Transit Co., 66 So.2d 214 (Fla. 1953). Consequently, particularly in negligence suits, summary judgments are in practice difficult to sustain and may well result in prolonging rather than shortening litigation. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The critical question is not whether there is a right to summary judgment when there is no genuine issue of material fact. That is the current law and no one suggests that there should be trials when there are no issues. The critical and difficult question is always whether there is a genuine issue of material fact. Provision (b) does not contribute to the resolution of that question.