144 So.2d 319 (1962)
WEBB'S CITY, INC., a Florida Corporation, Appellant,
v.
James HANCUR, Appellee.
No. 2877.
District Court of Appeal of Florida. Second District.
August 15, 1962.
Rehearing Denied September 20, 1962.
David G. Hanlon, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
George B. Foss, Jr., of Fowler, White, Gillen, Humkey & Trenam, St. Petersburg, for appellee.
ELMORE, FRANK H., Associate Judge.
James Hancur, appellee, plaintiff below, secured a judgment based upon a jury verdict for $3500 compensatory damages and $3500 punitive damages against Webb's City, Inc., a Florida corporation, appellant, and defendant below.
Hancur, a retired man sixty years of age, was sitting at the counter of the coffee shop *320 in the store of Webb's City, Inc. in St. Petersburg, having been served a cup of coffee by a waitress. A man named Spangler, whose identity was unknown to Hancur, came in and sat on the stool next to Hancur. He became noisy and boisterous, produced a bottle of whiskey and offered some to the waitress while talking loudly. The waitress served Spangler a cup of coffee but he continued to act in a boisterous fashion. Hancur said nothing to him except "You had better drink some of that black coffee; it will do you a lot of good." Shortly thereafter a "husky type man" (so described by Hancur) came in and pulled Spangler off the chair without letting him drink his coffee, told him to pay for his coffee and get out and escorted him outside. The "husky man" then returned and asked Hancur to hurry up and drink his coffee which was still hot. Hancur replied that he had to sip his coffee slowly whereupon the stranger (for he had not identified himself to Hancur) pulled Hancur off the chair, took him over to the cashier and ordered him to pay for his coffee. Hancur had not consumed all of the coffee in his cup so he told the man that he would not pay for anything that he had not consumed. Then the "husky man" pushed Hancur from the cashier's station toward a storage place where Hancur asked the stranger if he could return to the cashier's station and ask two women who had been sitting across from him to be witnesses as to what had occurred, but the man refused. Hancur then started to go back to the counter to get his cap but the stranger would not let him go, so another man, afterwards identified as a floor-walker of the defendant corporation, got it for him. Only then, at Hancur's request, did the man identify himself as Howard A. Roush, a store detective employed by Webb's City, Inc., the defendant. Roush then searched Hancur by patting him from head to foot although he had not accused Hancur of theft.
While in the storage area Roush asked an elderly employee of defendant to call the police. That employee was reluctant to do so, but when Roush repeated the order did place a phone call. In about three or four minutes two St. Petersburg police officers appeared. Roush told them he wanted Hancur arrested. They asked him "What for?". Roush was slow in replying but finally said that he was charging Hancur with disorderly conduct. The officers then told Hancur to go along with them and Roush to come with them to sign an affidavit. Roush objected and went only after discussion with the police officers. Being outside the establishment on the sidewalk, Roush again searched Hancur.
Hancur was taken to jail, fingerprinted and photographed and imprisoned on the basis of a warrant of arrest issued on the affidavit of Roush. The originator of the disturbance, Spangler, was not arrested. Plaintiff spent the night in jail, was unable to sleep or eat, and appeared before the Municipal Judge in the morning. Roush was present and testified on behalf of the defendant. He did not produce the waitress, cashier, floor-walker, nor the two women who had been sitting at the counter watching what had gone on. After hearing the testimony of Hancur the Municipal Judge dismissed the case and freed him, saying in effect to Roush that he had arrested the wrong man.
At the trial in the court below, Hancur testified that this was the first time in his life that he had been arrested and that he did not drink for health reasons. The testimony of Hancur that he had not been disorderly was corroborated and while there was contrary testimony given by employees of the defendant, the jury apparently believed the plaintiff.
By his complaint Hancur charged the defendant, Webb's City Inc., with assault and battery, false arrest and imprisonment, and malicious prosecution, alleging that all of those acts were done wilfully, maliciously, with a wanton disregard for the rights of plaintiff, and without probable cause, and asked for compensatory and punitive damages.
*321 The sole point for determination is whether or not the trial court committed error in charging the jury on punitive damages; or stated alternatively, was there sufficient evidence to warrant a finding in favor of the plaintiff for punitive damages? The contested instruction was this:
"If you should find from a preponderance of the evidence in this case that the assault and battery and false arrest and imprisonment complained of were attended with malice, wantonness, oppression or gross outrage, then, in addition to such compensatory damages as you may find from the evidence the Plaintiff is entitled to, you may also assess exemplary or punitive damages against the defendant, such damages to be dependent upon the circumstances of this case, upon the demonstrative degree of maliciousness, wantonness, oppression or gross outrage, and the financial ability of the Defendant to pay punitive damages."
Punitive or exemplary damages, while considered anachronistic by some authorities and abandoned or outlawed in several jurisdictions of the United States, are allowed in the State of Florida. The early case of Smith v. Bagwell, 19 Fla. 117, 45 Am.Rep. 12, 14 (1882) stated the rule:
"Compensatory damages are such as arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and to these may be added bodily pain and suffering. Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but a punishment to the offender and an example to the community."
Almost 70 years later in the case of Ross v. Gore, 48 So.2d 412 (1950) the Supreme Court of Florida held that:
"Punitive damages are allowed not as compensation to a plaintiff but as a deterrent to others inclined to commit a similar offense and their allowance depends on malice, moral turpitude, wantonness or outrageousness of tort."
Smith v. Bagwell is not mentioned. Ross v. Gore does not overrule, expressly or sub silentio, the authority of the earlier case. The holdings, on first impression seemingly at variance, are reconcilable. In theory, punitive damages are allowed for the purposes stated in Ross. Practically, the award enriches the plaintiff, as stated in Smith. Thus, it has been argued that such damages should go to the state as a "fine" and not to the plaintiff as a windfall. In one case it was even suggested that this windfall is the equivalent of an illegal confiscation of the defendant's property for the benefit of the plaintiff. Commenting on that, an article in the Harvard Law Review (70 Harv.L.Rev. 525) says this:
"Awarding exemplary damages to the state might permit the jury to take a more objective view of the defendant's motives and conduct, divorced from sympathy or distaste for the plaintiff. However, the subsidiary functions of exemplary damages  compensation and revenge  seem to justify making the award to the plaintiff even though it may be largely a windfall. (Footnote: `Perhaps the injury cannot be compensated by a pecuniary indemnity and can give rise only to a counter payment ...; then the transition is insensible between the indemnity looking only to a compensation of the loss sustained, and that looking to a punishment of the wrongdoer.' Demogue, Validity of the Theory of Compensatory Damages, 27 Yale L.J. 585, 592 (1918)."
This approach finds support in the language of a New York case embraced in the text of 2 Sutherland on Damages, Fourth Edition § 401:
"We concede that smart money allowed by a jury and a fine imposed at the suit of the people depend on the *322 same principle. Both are penal and intended to deter others from the commission of the like crime. The former, however, becomes incidentally compensatory for damages, and at the same time answers the purposes of punishment."
While only three states, Connecticut, Michigan and New Hampshire, expressly recognize the function of compensation in the award of exemplary damages, nevertheless decisions in many other states take the realistic view enunciated by our Supreme Court in Smith v. Bagwell. For example, a Kansas case, Titus v. Corkins, 21 Kan. 722 (1879) says:
"* * * punitive damages mean more than compensation: they imply punishment and are to deter the wrongdoer as well as compensate the injured."
The secondary aspect of exemplary damages, that of incidental compensation of the plaintiff, was recognized in the opinion of the Supreme Court written by Mr. Justice Davis in leading case of Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 215, 221 (1936) where the court said:
"Exemplary or punitive (sometimes called vindictive) damages are assessable dependent on the circumstances showing moral turpitude or atrocity in the defendant's conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as `smart money' against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs."*
Exemplary damages are allowed for malice, moral turpitude, wantonness, or outrageous tort. Dr. P. Phillips & Sons, Inc., v. Kilgore, 152 Fla. 578, 12 So.2d 465 (1943). Appellant contends that there was insufficient evidence of malice or wanton conduct to justify the quoted instruction and that by giving it the court led the jury to award punitive damages and thereby committed error.
"The province of the court in all cases of claims for punitive or exemplary damages is to decide at the close of the evidence, as matter of law, the preliminary question whether or not there is any legal basis for recovery of such damages shown by any interpretation of the evidence favorable to the plaintiff and relied upon by him to support his claim therefor." Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 222.
The trial court had before it, among other evidence, these acts from which to infer malice: the refusal of Roush to allow the plaintiff to obtain the names of the two women who had been sitting across from the counter to testify for him or even to obtain their names himself as asked by the plaintiff; the refusal of Roush to let the plaintiff get his cap; the reluctant attitude of the "elderly employee" when requested to phone the police; the searching and repeated searching of the plaintiff when no accusation of theft had been made; the failure or refusal of Roush to bring any witnesses to the trial before the Municipal Court; the mistreating of plaintiff by Roush before he had identified himself; the failure or refusal of Roush to summon Spangler as a witness before the Municipal Court; and another fact not embraced in the summary of the evidence first above, the admission of a floor-walker, an employee of defendant, that he had lied to the plaintiff and his attorney when he told them that he knew nothing about the occurrences constituting the torts.
The language of Mr. Justice Terrell in Glickstein v. Setzer, Fla., 78 So.2d 374, fits this case like a glove:
"It is not shown that appellee(s) (was) were at any time the aggressor(s) and for all the record shows, if appellant's (employee's) attitude had been seasoned with a small measure of *323 human kindness and a few gills of selfrestraint, the unfortunate affray could have been avoided. Such affairs are rarely provoked for slighter reasons and the fact that appellee(s) were (was) (a) guest(s) of appellant intensifies its ugliness. Appellant appears to to have overlooked the high degree of care that the law exacts of innkeepers and operators of restaurants with respect to their guests. If failure in the exercise of this care injects humiliation, cultural and other intangibles into the picture as part of the damage suffered, the modern jury is not inclined to measure it in the coin of former generations of cheap commodities."
The appellant also asserts that since the instruction in question did not mention that punitive damages could be imposed for malicious prosecution, apparently restricting consideration of such damages to their relationship to assault and battery and false arrest and imprisonment, there was insufficient evidence as a matter of law to warrant a finding in favor of the plaintiff for punitive damages. This contention may be disposed of summarily. In the early case of Jones v. Greeley, 25 Fla. 629, 6 So. 448, the court found, in affirming a judgment based upon a jury verdict in an action of libel that:
"A charge which authorizes the jury to determine whether the language set forth in the declaration has a defamatory meaning, is not erroneous as confining them to that language when they are told that their determination must be founded on their belief from the evidence, there being other evidence than the language of the declaration."
The instruction in the instant case, although it omitted reference to malicious prosecution, nevertheless drew the attention of the jury to the evidence as a whole by telling the jury that they might "assess exemplary or punitive damages against the defendant, such damages to be dependent upon the circumstances of this case." (Emphasis supplied.) The jury could have found punitive damages on all four counts or on any one. Punitive damages are "peculiarly left to the discretion of the jury as the degree of punishment to be inflicted must always be dependent on the circumstances of each case, as well as upon the demonstrated degree of malice, wantonness, oppression, or outrage found by the jury from the evidence." Winn & Lovett Grocery Co. v. Archer, Fla., 171 So. 214, 221.
We do not regard the instruction as erroneous, but had it been, it would in this instance have been cured by the verdict, there being no doubt as to the propriety of the verdict.
Finding no reversible error in the proceedings below, the judgment is affirmed.
Affirmed.
SHANNON, C.J., and ALLEN, J., concur.