258 So.2d 828 (1971)
CITY OF HOLLYWOOD, a Municipal Corporation, et al., Appellants,
v.
George Munroe COLEY, Appellee.
No. 70-184.
District Court of Appeal of Florida, Fourth District.
April 30, 1971.
*830 Thomas B. Mimms, Jr., of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellants.
H. Robert Koltnow and Gerald Kogan, Miami, for appellee.
McCAIN, DAVID L., Associate Judge.
Defendant, City of Hollywood, appeals a final judgment entered upon a jury verdict awarding plaintiff, George M. Coley, compensatory and punitive damages for false arrest and imprisonment, and compensatory damages for malicious prosecution.
On the morning of July 21, 1967, plaintiff Coley, a general contractor, was engaged in the construction of a one-story commercial building on his own lot, when defendant Edward Stewart, a building inspector for the City of Hollywood, arrived at the jobsite to make a periodic inspection of the construction.
Stewart's inspection revealed that plaintiff was applying a substance called "Marblecrete" directly to the bare wall of the building as a finish coat, without first applying a base or scratch coat of stucco as required by the county building code. However, after a discussion with plaintiff, Stewart decided to call in another inspector, since "Marblecrete", a custom product, was at least arguably equivalent to a coat of base stucco and a coat of finish stucco.
When Stewart returned to the jobsite with defendant August Rahenkamp, another building inspector for the city, plaintiff's men were still applying the Marblecrete to the bare wall of the building. Plaintiff was asked to cease work and given a notice of violation which allowed him one day to correct the deficiency.
At this point the sequence of events revealed by the testimony at trial becomes somewhat confused. On the one hand, defendants testified that plaintiff threw down the notice of violation and walked away, refusing to stop work, whereupon Rahenkamp displayed his badge and identification card and placed plaintiff under arrest. Plaintiff then got into his truck and drove off without saying where he was going.
Plaintiff's version, substantiated by the testimony of one of his employees, is somewhat different. He testified that he immediately ordered his men to cease working while he went home to get the blueprints for the building, which he intended to use in support of his position that he was not operating in violation of the building code.
Both sides agree that, whatever his intentions when he drove away, plaintiff did return sometime later with the blueprints for the building. When he arrived again at the jobsite he was met by both building inspectors and defendant Eugene Pisseri, a uniformed police officer with the City of Hollywood who had been called in by Stewart and Rahenkamp in plaintiff's absence.
*831 Pisseri was informed by defendant Rahenkamp that plaintiff was still under arrest, and he then asked plaintiff to get into the car and go to the police station. Plaintiff did not refuse to do so, but did walk away momentarily to speak to his wife who had just arrived on the scene. Eventually he did get into the police car and was taken to the station, where he was charged with "use of insufficient material" and resisting arrest without violence. He was held for three hours in the police station, and was finally released only after he submitted to fingerprinting. At a trial on the merits, he was acquitted of both charges lodged against him.
Plaintiff then brought the instant tort action, alleging counts in false arrest and imprisonment and malicious prosecution. By a jury verdict he was awarded compensatory and punitive damages on both counts, but the punitive damages award on the malicious prosecution count was set aside by the trial judge on defendants' motion for judgment notwithstanding the verdict.
On this appeal, defendants argue that the trial court erred in failing to direct a verdict in their favor on Count I of plaintiff's complaint dealing with false arrest and imprisonment. In essence, they contend that plaintiff failed to come forward with evidence from which the jury could infer that either (1) defendants were without legal authority to make any arrest, or that (2) defendants exceeded their authority in making the arrest. As an alternative point, defendants contend that punitive damages should not have been awarded on the false imprisonment count. Plaintiff cross-appeals the order of the trial court setting aside the jury award of punitive damages on Count II in a malicious prosecution.
We will consider first defendants' contention that a directed verdict in their favor should have been granted on the false arrest and imprisonment count. Clearly, if plaintiff had proved at trial that defendants were without any arrest powers, the arrest in question would have been unlawful (unless it came within the citizen's common law arrest privilege recognized in Florida), and would constitute a false arrest and imprisonment. However, the burden of proving that the building inspectors lacked arrest powers was on plaintiff as an element of his cause of action, and we agree with defendants that he failed to meet his burden on this issue.
The building code in question was not introduced into evidence at trial, and is nowhere to be found in the record on appeal. The rule in Florida is that municipal ordinances will not be judicially noticed, and we are therefore precluded from considering the specific provisions of this building code dealing with arrest powers of building inspectors, if such indeed exist. Freeman v. State, 1882, 19 Fla. 552; State ex rel. Foster v. Yocum, 1939, 140 Fla. 53, 191 So. 35; Crystal River v. Williams, Fla. 1952, 61 So.2d 382; Medley v. Caplan, Fla.App. 1966, 191 So.2d 449.
The only evidence given by plaintiff on the issue of arrest powers was (1) testimony of a retired chief building inspector who stated that he had not heard of any arrests made by inspectors during the fourteen years he was employed by the building department; and (2) testimony by the inspectors that they received no police training in the arrest and detention of suspects of crimes. This evidence, even if believed by the jury, was, we believe, insufficient to meet plaintiff's burden of proof that defendants lacked arrest powers, and we must therefore assume for purposes of this appeal that defendants were indeed vested with powers of arrest.
Where there is no proof that the person or persons making an arrest are without arrest powers, in order to recover for false arrest of the person it must be shown that the restraint was unreasonable and such as was not warranted by the circumstances. Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214.
*832 It was plaintiff's contention below, and again on this appeal, that the arrest was unreasonable per se because immediately prior thereto defendants had issued a notice of violation giving plaintiff one day in which to correct his work. Defendants, on the other hand, argue that plaintiff had evidenced his intent not to obey the notice, but to continue in violation of the building code, by his action in throwing down the notice and in failing to call his men off the job. Plaintiff counters with the testimony of his employee to the effect that he did order his men to cease working immediately. Given this conflicting evidence as to plaintiff's reaction to the notice, we think it was proper for the jury to consider the reasonableness of the arrest in the circumstances. We therefore affirm the trial court judgment awarding plaintiff compensatory damages for false arrest and imprisonment.
Turning to the question of punitive damages, it will be remembered that in the case sub judice the jury brought in awards of punitive damages for both false arrest and imprisonment and for malicious prosecution, but that the trial judge set aside the award on the malicious prosecution count, while letting the false arrest and imprisonment award stand. Both decisions are in issue here.
Punitive damage awards are levied as punishment for aggravated misconduct in an attempt to deter such conduct in the future. Webb's City, Inc. v. Hancur, Fla.App. 1962, 144 So.2d 319; Dr. P. Phillips & Sons, Inc. v. Kilgore, 1943, 152 Fla. 578, 12 So.2d 465; Winn & Lovett Grocery Co. v. Archer, supra. Generally, our courts allow recovery of punitive damages in cases where the wrongful act complained of is committed with fraud, actual malice, deliberate violence or oppression, or where defendant acts wilfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Winn & Lovett Grocery Co. v. Archer, supra; Doral Country Club, Inc. v. Lindgren Plumbing Company, Inc., Fla.App. 1965, 175 So.2d 570; Adjustment Specialists, Inc. v. Collection Bureau of Orlando, Fla.App. 1969, 221 So.2d 443.
However, where the tort in question includes as one of its elements actual malice, deliberate violence or oppression, fraud, or any other conduct which also justifies an award of punitive damages, the conception of the purpose and function of punitive damage awards tends to break down.
On the one hand, there are cases which refuse to allow punitive damages for those elements of damage which constitute the gravamen of the tort, regardless of the nature of the tort. For instance, in General Finance Corporation of Jacksonville, Inc. v. Sexton, Fla.App. 1963, 155 So.2d 159, 162, the court in considering punitive damages in a conversion action, made the following statement:
"But a tort committed by mistake in the bona fide assertion of a supposed right will not warrant the giving of punitive damages where all the elements of the aggravation are authorized to be included in the compensatory award. That is to say, if the indignity suffered, the humiliation experienced, and the like are elements of compensatory damages, as is true for the tort of false imprisonment, these same elements cannot be the basis of an inference of deliberate violence, oppression, malice or outrage for the purpose of awarding exemplary or punitive damages which may be based only upon acts exceeding those permitted to the defendant had he not been mistaken in his bona fide assertion of his supposed right."
Contra to cases of this nature are those which permit an award of punitive damages where proof of the tort includes proof of actual malice, fraud, deliberate violence or oppression, or willful and wanton *833 negligence. In Wrains v. Rose, Fla.App. 1965, 175 So.2d 75, 79, a case involving the tort of malicious prosecution, the court stated:
"Although malice is an essential element in malicious prosecution, deliberate violence or oppression are not prerequisites for assessment of exemplary damages in cases purely in tort where the wrongful act is such as to imply malice, or when from great indifference to persons, property or rights of others malice is imputable to the wrongdoer."
Thus, if actual malice is implicit in tort itself, proof of the tort will be sufficient to justify an award of punitive damages, even though compensatory damages are recoverable for the same damage. Aggravated misconduct over and above the actual commission of the tort is not necessary.
Which of these approaches provides the better-reasoned solution to the problem? In light of the purpose of punitive damages to punish and deter the wrongdoer, rather than to compensate the injured plaintiff, it is our conclusion that punitive damage awards should be permitted whenever the evidence indicates the presence of fraud, actual malice, deliberate violence or oppression, or when the defendant has acted willfully or with such gross negligence as to indicate a wanton disregard of the rights of others, regardless of whether or not such conduct is part of the gravamen of the tort. If the purpose of punitive damages is to punish certain kinds of conduct by defendants, and to attempt to deter such conduct in the future, then we believe that such conduct should be punished whenever encountered, regardless of whether it also forms the basis of the tort sued upon.
Therefore, since as Wrains, supra, concludes, actual malice is one of the elements of the tort of malicious prosecution, the verdict of the jury awarding plaintiff in the instant case compensatory damages for malicious prosecution constitutes a sufficient finding of malice to justify the award of punitive damages. We must, therefore, reverse the order of the trial judge setting aside the jury award of punitive damages to plaintiff on the malicious prosecution count.
With regard to the punitive damage award for false arrest and imprisonment, although malice is not an element of that tort, we conclude that the evidence at trial was sufficient to permit the jury to consider whether such actual malice or bad will was shown by the building inspectors in making the false arrest as to warrant an award of punitive damages. The jury found that it was so established. We therefore affirm that part of the judgment awarding plaintiff punitive damages for false arrest and imprisonment.
For the foregoing reasons, the judgment appealed from is affirmed in part, reversed in part and this cause is remanded for further proceedings consistent herewith.
Affirmed in part; reversed in part; and remanded.
WALDEN, J., concurs.
REED, J., concurs in part; dissents in part, with opinion.
REED, Judge (concurring in part, dissenting in part):
I would affirm the order of the trial judge setting aside the award of punitive damages on the count for malicious prosecution. Nowhere in the record can I find evidence that the defendants acted with actual malice when they initiated a proceeding against the plaintiff in the municipal court. Unless a tort is committed with actual *834 malice or what in law is its equivalent  such a reckless disregard for the rights of another as to reasonably suggest the presence of actual malice  an award of punitive damages is not proper. Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214, 222.
The majority opinion takes the position that actual malice is an essential element of the tort of malicious prosecution and, therefore, concludes that proof of the tort automatically justifies an award of punitive damages. I do not believe that this is an accurate analysis of the tort of malicious prosecution. It is my understanding that the cause of action can be sustained on the basis of proof of constructive or legal malice, even without proof of actual malice. Gallucci v. Milavic, Fla. 1958, 100 So.2d 375, 378; Wilson v. O'Neal, Fla. App. 1960, 118 So.2d 101, 105 (app. dism. Fla. 1960, 123 So.2d 677).
While the distinction between legal malice and actual malice may seem somewhat shadowy, the difference lies in the quality of proof that may be considered sufficient to demonstrate these elements. Proof of legal malice may be supplied by evidence indicating that there was a want of probable cause for the prosecution. Proof of actual malice, however, would of necessity require evidence which would more directly tend to prove an evil or malicious intent in the mind of the alleged tortfeasor. It is only this latter type malice which justifies an award of punitive damages. The opinion of the majority has established a rule which would allow an award of punitive damages to rest on evidence sufficient only to show legal malice.
I concur in conclusion of the majority to affirm the award under Count I and dissent from that part of the majority opinion which reverses the order of the trial court setting aside the award of punitive damages on the malicious prosecution count. I would affirm the judgment appealed from.