436 So.2d 338 (1983)
Jessie Mae HARRIS, Appellant,
v.
The LEWIS STATE BANK, Appellee.
No. AP-230.
District Court of Appeal of Florida, First District.
August 12, 1983.
Rehearing Denied August 31, 1983.
*339 Samuel T. Adams, Panama City, for appellant.
Cynthia S. Tunnicliff of MacFarlane, Ferguson, Allison & Kelly, Tallahassee, for appellee.
ERVIN, Chief Judge.
In this appeal from entry of summary judgment on behalf of appellee, the Lewis State Bank (Bank), appellant, Jessie Mae Harris (Harris), contends that summary judgment was improper because material issues of fact remain unresolved in her action for malicious prosecution and false imprisonment. We agree, as to the count alleging false imprisonment only, and affirm in part and reverse in part.
The record discloses that Harris, a semiliterate, ninety-pound black woman, partially crippled from a bout with polio, received a statement from the Bank in July of 1980, which was addressed to "John Lewis and Jessie Mae Harris", General Delivery, Woodville, Florida. The statement had been forwarded to Harris at her correct mailing address of General Delivery, Crawfordville, Florida. Knowing that she did not have any bank account in general and that she did not have one at the Lewis State Bank in particular, Harris went to Tallahassee to find out what the statement meant. Upon arriving at the Bank, Harris told a teller that she had received the statement; that, while she had some relatives in South Florida named "Lewis", she was not familiar with a "John Lewis", and that she did not understand why she had received the statement. After checking Harris' personal identification, but not the signature cards for the account on file at the Bank, the teller informed Harris that some one must have put the money in the bank for her and that she could make withdrawals on the account. Harris returned to the Bank on July 21, 1980 and was allowed to withdraw $500.00 after presenting her social security and voter's registration cards as identification. To facilitate future withdrawals, Harris was told she should have a picture identification card made and was directed to another bank employee for that purpose. Harris received the Bank identification card approximately one week later by mail. Between July 23, 1980 and September 17, 1980, Harris made four more withdrawals totaling $475.00.
Meanwhile, John Lewis, who had been hospitalized for some time, returned home. On September 22, 1980, he went to the Bank and discovered the deductions from the account. Lewis was told by bank officials that either his daughter, "Jessie Mae Harris" of Miami, had withdrawn the money or someone had forged her name and made unauthorized withdrawals. Lewis' daughter came to Tallahassee from Miami and verified that she had not made the withdrawals; the Bank reimbursed Lewis for the missing money, and a new account in the name of "John Lewis" in trust for "Jessie Mae Harris" was opened.
John Lewis, believing that someone had forged his daughter's signature and that the culprit was one of his neighbors who had taken advantage of him while he was in the hospital, contacted the Leon County Sheriff's Department to report the incident. Detective Franklin was assigned to investigate the report, and, in the course of that investigation, contacted Lewis, the suspected neighbor, and bank officials. At no time was Franklin told that Bank employees had allowed Harris to withdraw the money. Franklin told Bank officials to be on the lookout for anyone attempting to withdraw money from Lewis' account.
In January of 1981 the Bank sent a statement for the new account to Lewis and that statement was again erroneously forwarded to Harris in Crawfordville. On January 21, 1981, Harris returned to the bank to make a withdrawal. When she identified herself and stated her purpose bank officials were called and the Bank security guard, Manley Woodson (an off-duty Tallahassee police officer), detained Harris until the arrival of Detective Franklin, who arrested Harris, *340 and then took her to the Sheriff's Department for questioning. Harris there recounted the events surrounding the withdrawals and told Franklin that she believed, based upon information received from Bank employees, that someone had left the money for her in a will. Despite the fact that Detective Franklin later stated he believed Harris honestly thought someone had left her the money, he executed a probable cause affidavit charging Harris with grand theft. She was later tried and acquitted on all counts.
After the trial, Harris filed a complaint against Leon County Sheriff Eddie Boone, alleging false imprisonment and malicious prosecution. No answer to the complaint was made; instead Boone moved for summary judgment. Harris then sought leave to join the Bank as a defendant and to amend her complaint by alleging the same torts against the Bank. The lower court first granted, then denied, Boone's motion for summary judgment and the action against Boone is still pending. The court also granted Harris' motions to amend pertaining to the Bank. The Bank, then a party to the action, without filing an answer, moved for summary judgment. Summary judgment was entered in favor of the Bank on October 12, 1982, the court finding that there were no genuine issues as to any material facts in dispute and that the Bank's alleged participation in Harris' arrest, detention and prosecution consisted of no more than her arrest and brief detention by an "off-duty police officer employed by this Defendant, but acting under his authority as a law enforcement officer... ."
In addressing the issue before us we return to the well-worn maxim that summary judgment "should not be granted unless the facts are so crystallized that nothing remains but questions of law ...", Green Valley School, Inc. v. Cowles Florida Broadcasting, Inc., 327 So.2d 810, 817 (Fla. 1st DCA 1976), and if there is "the slightest doubt upon any issue of material fact[,] then ... summary judgment may not be entered."[1]Connell v. Sledge, 306 So.2d 194, 196 (Fla. 1st DCA 1975) (e.s.). Despite the Bank's failure to frame the issues in this case by not filing an answer, we agree that the lower court properly granted summary judgment as to that count alleging malicious prosecution. In order to recover for this tort, Harris has the burden of alleging and proving a concurrence of the following six elements:
(1) the commencement or continuation of an original civil or criminal judicial proceeding; (2) its legal causation by the present defendant against the plaintiff; (3) its bona fide termination in favor of the plaintiff; (4) the absence of probable cause for such prosecution; (5) the presence of malice; and (6) damages conforming to legal standards resulting to the plaintiff.
Johnson v. City of Pompano Beach, 406 So.2d 1257, 1258 (Fla. 4th DCA 1981). The absence of any one element is fatal to the action. Clements v. Eastern Airlines, Inc., 183 So.2d 264, 266 (Fla. 3d DCA 1966). The record indicates that John Lewis, upon learning of the unauthorized withdrawals, notified the Leon County Sheriff's Department, thus setting in motion the investigation which led to Harris' arrest and prosecution. While Lewis' initial report to law enforcement officials may have been prompted by the erroneous information he received from the Bank, the relationship between that misinformation and Harris' later detention, arrest and prosecution is simply too tenuous to ever reach the level *341 of legal causation and malice required in a malicious prosecution action. We therefore affirm that portion of the lower court's order granting summary judgment as it relates to the charge of malicious prosecution.
We find, however, that the lower court erred in granting summary judgment on the count for false imprisonment. This tort is defined as "... the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and deprivation of his liberty." Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, 700 (1944). The plaintiff need not show that force was used in the detention, Lewis v. Atlantic Discount Company, 99 So.2d 241, 242 (Fla. 1st DCA 1957), nor that she made an oral protest to demonstrate that the detention was against her will. Rose's Stores, Inc. v. Mason, 338 So.2d 1323 (Fla. 4th DCA 1976). See also 24 Fla.Jur.2d False Imprisonment § 2 (1981). A plaintiff alleging false imprisonment must show, however, that the restraint was "unreasonable and unwarranted under the circumstances." Kanner v. First National Bank of South Miami, 287 So.2d 715, 717 (Fla. 3d DCA 1974) (e.s.). The undisputed facts of this case show that Harris was in fact detained by the Bank's security guard against her will, thereby satisfying the basic requisites of an action for false imprisonment. The only substantial issue is whether under the circumstances the detention was unreasonable and unwarranted. In order to resolve this issue it is first necessary to determine the status of the security guard at the time of the detention. It is Harris' position that the guard was acting in his capacity as a Bank employee at the time of the detention. If that is true, then the notice or knowledge of other Bank officials or employees, relating to the circumstances surrounding the initial withdrawals, may be imputed to the security guard. That is because
... a corporation ... acts only through individuals and, of course, in the operation of its business acts through many individuals. But the defendant [corporation] is charged with notice of all transactions had by those through whom it does business. When ample time exists for communication between different employees a failure of one employee to advise another of transactions affecting the corporate business is the fault only of the corporation.

St. Petersburg Coca-Cola Bottling Co. v. Cuccinello, 44 So.2d 670, 676 (Fla. 1950) (e.s.). See also 8 Fla.Jur.2d Business Relationships § 330 (1978). Thus, it is argued, if the security guard were acting as a Bank employee at the time of the detention, he would be charged with knowledge of the fact that Bank tellers had told Harris that she was free to withdraw money from Lewis' account some six months prior to her detention. His imputed knowledge would then have a bearing on whether the detention of Harris was unreasonable and unwarranted under the circumstances. The Bank sought to refute this argument by filing an affidavit wherein the guard stated that in his opinion he had acted, in detaining Harris, in his capacity as a uniformed, off-duty Tallahassee police officer, and not in his capacity as a security guard for the Bank.[2] Harris filed a counter-affidavit, attaching a letter from Chief Melvin Tucker of the Tallahassee Police Department, in which Chief Tucker stated that the Department considered the guard to have been acting "primarily as a Bank employee during this incident." Thus, the lower court had before it two opposing affidavits on this crucial factual issue. It apparently accepted the representations made by the security guard in granting the Bank's motion.
A summary judgment proceeding, however, is not intended to be a "trial by affidavit or deposition." Connell, 306 So.2d at 196. Because the granting of summary *342 judgment is "in derogation of the constitutionally protected right to trial", the party moving for summary judgment must conclusively show the "non-existence of a genuine issue of material fact." Holl v. Talcott, 191 So.2d 40, 43, 48 (Fla. 1966). The conclusion that issues of material fact remain in dispute in this case, as far as the claim of false imprisonment by the Bank is concerned, is thus inescapable and requires reversal of that portion of the summary judgment relating to the claim of false imprisonment.[3]
Accordingly, this case is AFFIRMED in part, REVERSED in part, and REMANDED to the lower court for further consistent proceedings.
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] We note that the issues of fact in any case are initially framed by the pleadings and not by motions, depositions or affidavits. Hart Properties, Inc. v. Slack, 159 So.2d 236, 239 (Fla. 1963). Motions, of course, are not pleadings. H. Trawick, Florida Practice and Procedure § 6-1 at 60 (1979 ed.). Accord White v. Fletcher, 90 So.2d 129 (Fla. 1956) (motion for summary judgment is not a pleading). The purpose of the civil rules of procedure, that is to reach the issues of law and fact in "one affirmative and one defensive pleading", is obviously frustrated if "operative issues, as distinguished from evidential issues, are allowed to be created outside the pleadings... ." Hart Properties, Inc., 159 So.2d at 239. Since no responsive pleading has ever been filed in this case, it is difficult to understand what material issues are in dispute, much less to determine, as did the lower court, that no dispute remains.
[2] The Bank's position that the security guard was not acting as a bank employee at the time of the detention is a form of defense and may not be raised for the first time in an affidavit in support of a motion for summary judgment. See Wiggins v. Portmay Corp., 430 So.2d 541, 542 (Fla. 1st DCA 1983) (affirmative defenses may not be raised in affidavits for summary judgment).
[3] Harris alternatively contends that if summary judgment were proper this court should affirm the lower court's judgment but, at the same time, should remand for purposes of allowing her to amend the complaint so as to allege additional causes of action sounding in fraud and negligence, despite the fact that she has not sought leave below to make such amendment. Because we find summary judgment to be improper, insofar as the claim of false imprisonment is concerned, we need not reach the merits of this final point. We note, however, that the Florida Supreme Court has expressly receded from a line of prior decisions which had approved such procedure. See Dober v. Worrell, 401 So.2d 1322 (Fla. 1981) (to allow an appellate court to affirm summary judgment but then to allow the losing party to amend his initial pleadings would render a mockery of the concept of finality in our system of justice). On remand, however, Harris may of course move for leave to amend her complaint to include additional counts. Fla.R.Civ.P. 1.190(a). Leave to amend is within the discretion of the trial court, but is to be freely given where justice requires, with all doubts resolved in favor of amendment unless that privilege has been abused. See Townsend v. Ward, 429 So.2d 404 (Fla. 1st DCA 1983); David Miller Distributing Co., Inc. v. Florida National Bank at Arlington, 342 So.2d 856 (Fla. 1st DCA 1977).