Fred COLLINS, Appellee,

v.

STRAIGHT, INC., A Florida Corp., licensed to do business in the state of Virginia, Appellant.

No. 83–1767.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1984.

Decided Nov. 23, 1984.

Rehearing and Rehearing En Banc Denied Feb. 4, 1985.

James R. Miller, Jr., District Judge, sitting by designation, filed dissenting opinion.

Ronald L. Goldfarb, Washington, D.C. (Goldfarb, Singer & Austern, Washington, D.C.; John J. Brandt, Slenker, Brandt, Jennings & Johnston, Arlington, Va., on brief), for appellant.

Philip J. Hirschkop, Alexandria, Va. (David J. Fudala, Hirschkop & Grad, P.C., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge and MILLER,* District Judge.

CHAPMAN, Circuit Judge:

In this diversity of citizenship case, Straight, Inc. appeals a jury verdict of $40,000 in compensatory and $180,000 in punitive damages awarded to plaintiff Fred Collins on a false imprisonment cause of action. Finding that the evidence was sufficient for the jury to conclude that the plaintiff had been falsely imprisoned, that the jury was properly instructed concerning the applicable law and that the district court did not abuse its discretion in its ruling on certain questions of trial procedure, we affirm.

I

Collins entered the Straight drug treatment facility in June 1982 when he was nineteen years of age. He originally came to the Straight facility in Florida to visit his brother George who was enrolled there. Straight policy required siblings of participants to have a "sibling interview" before visiting a person enrolled in the program. During the course of this interview, Straight staff members concluded that Fred Collins should also enter the program. (Whether Collins was drug dependent and needed treatment was disputed at trial. Although this question of fact was a signif-

---

* Honorable James R. Miller, Jr., United States District Judge for the District of Maryland, sitting by designation.

icant one for the jury, it is not an issue on appeal.)

At trial plaintiff described the measures used by Straight staff members to induce him to enter the program. Collins testified that he was subjected to approximately six and one-half hours of intimidation by Straight staff members and former participants who blocked the door to prevent his escape from a small, windowless room; that his requests to leave and to be allowed to see his parents were refused; that staff members told him that he would not be able to see his brother or his parents until he agreed to enter the program; and that if he did enroll he would be able to leave after fourteen days. He ultimately signed a "voluntary treatment agreement." Plaintiff, unlike some of the other participants in the Straight program, was not admitted under a court order; nor was a court order obtained during the period he was at Straight.

After signing into the program, Collins was strip-searched and during the first seventy days he was either closely watched or restrained by another Straight participant. Evenings were spent in private homes that contained security devices to prevent escape. Collins testified that when he requested to be allowed to leave Straight after ten days, he was ridiculed and poked in the chest. When he mentioned the fourteen day time period to other participants they expressed their beliefs that such a rule was a sham and that Straight did not intend to release anyone after fourteen days. Plaintiff testified that persons who did try to leave were subjected to verbal and physical abuse and had their privileges curtailed. In October 1982 Collins was transferred to Virginia where he stayed at his parents' home for three nights. He testified that new locks and alarms had been installed in the house. According to his testimony he escaped from the house by throwing a table through the kitchen window, climbing through the window and leaving the premises in the car of a friend who had arranged to pick him up. Plaintiff had been in the Straight program for one hundred thirty-four days.

In his amended complaint, Collins contended that he was forced into Straight's drug treatment program and suffered false imprisonment, assault and intentional infliction of emotional distress. The court bifurcated the trial into separate stages for jury consideration of issues of liability and damages. Returning a verdict for the plaintiff on the false imprisonment claim, the jury found for the defendant on the remaining two issues.

## II

 Straight's primary claim is that the trial judge erred in failing to instruct the jury that an essential element in a false imprisonment case is proof that the restraint was "unreasonable and unwarranted under the circumstances" citing *Winn & Lovett Grocery Co. v. Archer,* 126 Fla. 308, 171 So. 214 (1936); *Kanner v. First National Bank of South Miami,* 287 So.2d 715 (Fla.App.1974) and several other Florida decisions. The trial judge refused to give the requested instruction, stating that he did not think reasonableness was a criteria under the circumstances of the present case.

The charge given by the court on false imprisonment was as follows:

Insofar as false imprisonment is concerned, false imprisonment is restraint of one's liberty without any sufficient cause and against his will. It is not essential that the plaintiff has been confined in a jail or placed in custody of an officer or that the word "arrest" be used or that actual force be used. If he was under a reasonable apprehension that force will be used unless he willingly submits and for that reason he did submit to the extent that he is denied freedom of action, this, in legal contemplation, is imprisonment.

The restraint in false imprisonment must be complete, that is, it must not be mere obstruction of the right to go where the plaintiff wants to go. For example, a one-way street restricts a person's freedom of movement to some ex-

tent. A teller's line at a bank—if you wanted to get by Mr. Jackson when he is standing there, you would have to walk around him. That restricts your freedom of movement, but that is not false imprisonment, because imprisonment is not complete.

If submission to the restraint is because of a reasonable apprehension that force will be used unless he willingly submits and if he willingly submits for that reason, then there is no requirement that he protests his detention or physically resist.

In order for the plaintiff to prove his claim then, of false imprisonment, you must show by a preponderance of the evidence the following three essential elements: (1) that he was restrained of his physical liberty; (2) that it was against his will; and (3) that the restraint was caused by the defendant without sufficient cause or legal excuse.

It is not necessary insofar as liability for false imprisonment is concerned for the plaintiff to show malice or ill will or wrongful intention on the part of a defendant. However, there must be intent to restrain him, his liberty.

You are instructed that any unlawful intention, as I have outlined it, by a person against that person's will constitutes false imprisonment, regardless of the length of time or duration of the imprisonment, whether it be an intake room at Straight or later when he alleges that he requested to leave.

It is not necessary for him to prove that he was falsely imprisoned during every moment of his stay in the Straight program.

Good faith of the defendant in restraining the liberty of another is no defense. The restraint was, in fact, against his

will complete, as I have outlined it, and without justifiable or legal excuse.[1]

Several times during the charge the court instructs that the restraint on liberty must be without "sufficient cause" "without sufficient cause or legal excuse," and "without justifiable or legal excuse." These constant references to "legal excuse," appear to put a higher burden of proof on the plaintiff than would a simple charge that the restraint was "unreasonable or unwarranted under the circumstances."

The cases relied upon by Straight do indicate that a jury must find the restraint to be "unreasonable and unwarranted under the circumstances," but these cases do not involve consent of the plaintiff, as was claimed in the present case, and the cases involve the usual stopping and detaining of customers or employees. Other Florida decisions do not indicate a requirement of the "unreasonable or unwarranted under the circumstances" test. *See Jackson v. Biscayne Medical Center, Inc.*, 347 So.2d 721 (Fla.App.1977) (holding that an allegation that the hospital exercised "unlawful restraint upon appellant, detaining him against his will, and did procure the arrest of appellant" were sufficient to state a cause of action for false imprisonment or false arrest) and *Johnson v. City of Pompano Beach*, 406 So.2d 1257 (Fla.App.1981) ("as to false arrest and false imprisonment, plaintiff was required to show that the defendants, in procuring her arrest, exercised unlawful restraint and detained her against her will.")

Reasonableness seems to be the test used when judging a stop or a detention when one is suspected of shoplifting or some other crime, and not when he has allegedly consented to the initial restraint.

---

**1.** The trial court appears to almost direct a verdict for the plaintiff in this paragraph of the charge. However, in response to questions from the panel at oral argument, the court was furnished with the trial court reporter's sworn affidavit stating that this portion of the jury instruction had been incorrectly transcribed and should have been transcribed as follows: "Good faith of the defendant in restraining the liberty of another is no defense where the restraint was in fact against his will, complete as I have outlined it and without justifiable or legal excuse."

We also note that in the sixth paragraph of the charge to the jury the court appears to have said "any unlawful intention" and we think he probably said "any unlawful detention".

■ Straight also contends that the jury should have passed upon whether its withdrawal procedures, including the "cooling off period" of ten to fourteen days were reasonable in programs handling persons involved with illegal drugs. The State of Florida has spoken to this point in its Rules of the Department of Health and Rehabilitative Services, Mental Health Program Officer, Chapter 10E–7, Drug Abuse Programs. In Chapter 10E–7.11 it requires "All programs or centers endeavoring to provide drug abuse treatment, rehabilitation, prevention and/or education must be licensed by the Department." Subparagraph 14(a) of this section provides:

No person who voluntarily submits to treatment may be retained in an approved center against his/her will. This regulation applies to all persons, whether placed by the Department or admitted to a licensed center by its own outreach and intake procedures. No licensed center may have an acceptance requirement or any plan of treatment that would retain the applicant or client in the program against his/her will. This right may not be waived by the applicant, client, parent, or the guardian of the applicant or client.

Under this rule it would appear that Straight's "cooling off period" of ten to fourteen days, during which a person is prevented from leaving after requesting to leave, would be unreasonable. Therefore, reasonableness of the "cooling off period" would not be a jury question.

We find that the judge's charge adequately set forth the law of false imprisonment to be applied in the present case.

### III

■ Defendant contends that the district court "erred in defining the law of consent," however, its argument is not with the language of the definition but with the sufficiency of the evidence on the voluntariness of any consent. This was a factual issue and at trial the parties presented conflicting testimony on the point. The jury was called upon to "weigh contradictory evidence and inferences, pass on the credibility of witnesses and draw the ultimate conclusion as to the facts." *Jarrell v. Ford Motor Co.,* 327 F.2d 233, 235 (4th Cir.1964). Although we may have reached a different conclusion, from the record it appears that there was sufficient evidence for the jury to have found that, if indeed Collins did consent, such consent was either not knowingly and voluntarily given, or, the scope of such consent was exceeded by Straight.

### IV

■ Straight argues that the district court erred in admitting evidence of "other bad acts" by Straight that involved people other than Collins. Defendant claims that it was severely prejudiced by this evidence because the testimony diverted the jury's attention from the plaintiff's case and resulted in "mini-trials" of Straight's treatment of other enrollees. We find the district court did not abuse its discretion, but properly restricted the evidence from other program participants concerning the practices of the Straight program. During the liability phase of trial the district court ruled that Collins would be allowed to testify concerning incidents that occurred in his presence. Collins related his observations that participants were not allowed to leave the program and that persons who escaped were brought back physically. He further testified that these incidents affected his decision not to try to leave the program. This testimony was proper on the issue of whether he consented to remain at Straight. Following Collins' testimony, two other participants who were at Straight during the time that plaintiff was there were allowed to corroborate his account. The court refused, however, to allow testimony of Straight participants who were not there at the same time as Collins.

During the damages phase of trial the court allowed in testimony of persons who were similarly situated to Collins. These witnesses were over the age of eighteen and alleged that they too had been held in the program against their will. The court reasoned that it was relevant for the jury

to consider whether the Collins case was an isolated incident or whether similar incidents were sufficiently widespread to warrant punishment in the form of punitive damages. This rationale is supported by the standard jury instruction on punitive damages from Devitt and Blackmar which defines "malicious" as "prompted or accompanied by ill will, or spite, or grudge, either towards the injured person individually, or toward persons in one or more groups or categories of which the injured person is a member" and "wanton" as "reckless or callous disregard of, or indifference to, the rights of one or more persons including the injured person." *Federal Jury Practice and Instructions*, § 85.11 (1977). *See also Richards Co. v. Harrison*, 262 So.2d 258, 262 (Fla.App.1972) ("[Punitive] damages go beyond the actual damages suffered in the case, and are imposed as a punishment of the defendant and as a deterrent to others.")

## V

■ Defendant claims error for failure to instruct that "actual malice" must be shown to support an award of punitive damages. Actual malice, however, need not be proven under Florida law. See *Winn & Lovett Grocery Co. v. Archer*, *supra* at 221 (punitive damages appropriate in cases of "fraud, actual malice, or deliberate violence or oppression or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.") *See also* 24 *Fla.Jur.*2d False Imprisonment § 11 (1981) ("For detention to be considered 'malicious,' the defendant need not act with anger, malevolence, or vindictiveness toward the plaintiff; it is sufficient if the act causing the wrongful restraint is without reasonable cause. However, an award of punitive damages generally is improper in an action for false imprisonment in the absence of a showing of moral turpitude or wanton and outrageous disregard of the plaintiff's rights.") The court's charge stated in part:

If you should find from a preponderance of the evidence in this case that the acts of the defendant in falsely imprisoning the plaintiff were *malicious* or *wanton* or *opressively* [sic] done, then you may, if in the exercise of discretion, unanimously choose so to do, add to the award of actual or compensatory damages such amount as you unanimously agree to be proper as punitive or *examplary* [sic] damages.

We find this to be a proper instruction under Florida law.

## VI

■ Defendant takes four final exceptions. That the district court erred in not granting a remittitur to reduce the punitive damages verdict, in refusing to grant a motion for change of venue from Virginia to Florida, in permitting the use of certain *de bene esse* depositions and in not granting a mistrial on grounds of attorney misconduct. We find that there was no abuse of discretion by the district court on these issues. Although we agree with the trial court's characterization of the verdict as high, and we are aware that difficult questions arise in treating drug abuse among young people, we must conclude that the verdict is not so excessive that it seems to have been motivated by sympathy and prejudice. Nor is it so high that it cannot be justified by the record. *Virginian Railway Co. v. Armentrout*, 166 F.2d 400 (4th Cir.1948).

■ With regard to the question of change of venue, a district court is required to weigh the factors involved and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946). In this case the plaintiff and his family, key witnesses in the case, were Virginia residents. Although certain witnesses had to come from Florida to Virginia to testify, had the trial been held in Florida certain witnesses would have had to travel from Virginia. The district court balanced the hardships

involved to all parties and reached a conclusion within its discretionary authority.

A review of the record indicates that the remaining two exceptions, which involve primarily issues of trial tactics, were carefully considered by the district court and the rulings on these questions were within the court's discretion.

Accordingly, the decision of the district court is

AFFIRMED.

JAMES R. MILLER, Jr., District Judge, dissenting:

I respectfully dissent from Part II of the court's opinion, because I believe that Florida law is unclear on the issues herein involved and that, under the circumstances of this case, certification of those questions of state law controlling herein should be made to the Supreme Court of Florida.

The majority recognize that, in this diversity case, the district judge refused to give the instruction requested by Straight that an essential element of proof in a false imprisonment case, under Florida law, is that the restraint was "unreasonable and unwarranted under the circumstances," and that the reason given by the judge for his refusal was "that he did not think reasonableness was a criteria under the circumstances of the present case." (P. 918). Citing *Jackson v. Biscayne Medical Center, Inc.*, 347 So.2d 721 (Fla.App.1977), and *Johnson v. City of Pompano Beach*, 406 So.2d 1257 (Fla.App.1981), the majority hold that "[r]easonableness *seems* to be the test used when judging a stop or a detention when one is suspected of shoplifting or some other crime, and not when he has allegedly consented to the initial restraint." (Emphasis supplied). P. 920.

Neither *Jackson, supra*, nor *Johnson, supra*, are decisions of the Supreme Court of Florida, the highest court of the State.

In addition, *Jackson, supra*, did not involve the question of the evidence necessary to establish the tort of false imprisonment, but merely held that the allegations

of the complaint were sufficient to withstand a motion to dismiss. *Jackson v. Biscayne Medical Center, Inc.*, 347 So.2d 721, 723.

In *Johnson*, a case involving an arrest by police officers for possession of lottery tickets, and not one, as here, involving an alleged consent to the initial restraint, the court, in reversing a summary judgment for the police, merely stated that since "plaintiff was required to show that the defendants, in procuring her arrest, exercised unlawful restraint and detained her against her will," *Johnson v. City of Pompano Beach*, 406 So.2d 1257 at 1259, a dispute as to relevant facts relating to that issue existed. Since the majority seem to concede that Florida law does require that the restraint be "unreasonable and unwarranted under the circumstances" in cases involving arrest by police for suspicion of criminal activity, p. 920, it is anomalous that the majority rely upon the *Johnson* case as support for their finding that Florida law omits that requirement in a case of the type here under consideration.

In my view, the state of Florida law on the question here involved is uncertain. No opinions of the Florida Supreme Court directly on point have been cited or found. Nevertheless, it could be argued that Florida law requires a finding of "unreasonableness under the circumstances" in the type of case here under consideration for the reasons set forth below.

Although it appears that the unreasonableness requirement was imposed first in retail merchant cases where, under the common law, "there is clearly an implied authority to do all things that may be proper and necessary for the protection of property," *S.H. Kress & Co. v. Powell*, 132 Fla. 471, 180 So. 757 at 761 (1938), and in cases in which the arresting or imprisoning person was acting under some official legal authority, *see, e.g., City of Miami v. Albro*, 120 So.2d 23, 27 (Fla.App.1960) (police officers); *City of Hollywood v. Coley*, 258 So.2d 828, 831 (Fla.App.1971) (building in-

spectors).[1] Florida law seems to have extended the unreasonableness concept to cover other types of imprisonment situations.

In two cases in which the defendants were neither merchants nor policemen, the Supreme Court of Florida applied a reasonableness of restraint requirement. In *Harris v. Lewis State Bank*, 436 So.2d 338 (Fla.App.1983), the court examined whether a bank security guard was acting as a bank employee or as a uniformed off-duty police officer when he arrested the plaintiff. The court could not determine from the record the employment status of the bank guard, but it stated that the status of the bank guard went to the issue of whether, under the circumstances, the plaintiff's detention was unreasonable and unwarranted. *Id.* at 341. The court reasoned that if the bank guard were a bank employee, certain knowledge of bank officials regarding the plaintiff's innocent actions could be imputed to the guard, and, thus, his detention of the plaintiff would have been unreasonable, *i.e.*, he should have known that plaintiff's withdrawals from the bank had been approved by bank officials. *Id.* If the bank guard were acting as an off-duty policeman, the knowledge of bank officials would not be imputed to him. Under either circumstance, however, the court indicated that the "plaintiff alleging false imprisonment must show ... that the restraint was unreasonable and unwarranted under the circumstances." *Id.*

The court in *Harris* did not discuss whether the bank was a "merchant," but in a previous Florida false imprisonment case, the court pointed out that a "merchant is a person who deals in goods ... other than money." *Washington County Kennel Club, Inc. v. Edge*, 216 So.2d 512, 516 (Fla.App.1968), *cert. denied*, 225 So.2d 522 (Fla.1969) (operator of a pari-mutuel racetrack not a merchant). Therefore, the court in the latter case refused to apply the anti-shoplifting statute codified then at Florida Stat.Ann. § 811.022.

An argument can be made that in *Harris* the court was not applying a limited common law privilege available only to merchants and police, but, on the contrary, was stating that in any false imprisonment case, the plaintiff must show that the restraint was unreasonable and unwarranted under the circumstances.

Similarly, in *Kanner v. First National Bank*, 287 So.2d 715 (Fla.App.1974), a case in which the head teller of the bank detained a sick employee until her accounts were verified, the court held that "[u]nder the circumstances, ... the detention of the plaintiff ... would serve no useful purpose to the defendant bank and, therefore, the restraint may have been unreasonable and unwarranted and resulted in false imprisonment." 287 So.2d at 717. The court reversed summary judgment for the defendant bank and remanded the case for trial on the issue. Here again the court did not discuss the concept of a merchant privilege. It stated, without qualification, "[f]alse imprisonment is the unlawful restraint of a person against his will. *Further*, the restraint must be unreasonable and unwarranted under the circumstances." (Emphasis supplied). *Id.* at 717 (citations omitted). The language of the Supreme Court of Florida here also indicates that the concept of unreasonableness is *not* subsumed under the concept of "unlawful restraint," but is an additional concept.

The majority also rejected the contention of Straight, in support of its requested jury instruction, "that the jury should have passed upon whether its withdrawal procedures, including the 'cooling off period' of 10 to 14 days were reasonable in programs handling persons" being treated for the use of illegal drugs. In doing so, the majority

---

**1.** The court in *Coley* explained that if the arresting person has "arrest powers," then, "in order to recover for false arrest of the person it must be shown that the restraint was unreasonable and ... not warranted under the circumstances." 258 So.2d at 831. The appellee argues from *Coley* that unless the actions of the defendant come within the scope of the merchant or police privilege, the plaintiff does not bear the burden of proving unreasonableness. Appellee's Brief at 20.

hold as a matter of law that subparagraph 14(a) of Chapter 10E–7.11 of the Rules of the Department of Health and Rehabilitative Services of Florida prohibits such a "cooling off period" and makes such a "cooling off period" unreasonable as a matter of law. The Supreme Court of Florida has not interpreted that rule. The rule, which is quoted *in toto* in the majority opinion, p. 920, in my view, does not necessarily prohibit a "cooling off period." The language of the rule does not in literal terms say that an individual must be "immediately" released upon withdrawal of consent nor does it in so many words prohibit a "cooling off period."

In a similar case, *Rice v. Mercy Hospital*, 318 So.2d 436 (Fla.App.1975), *cert. denied*, 330 So.2d 726 (Fla.1976), concerning a mental hospital's alleged false imprisonment of a person who had voluntarily committed herself for treatment, the trial court had instructed the jury on the false imprisonment charge by defining the plaintiff's statutory right to release upon request.[2] After charging the jury on the statute, the trial court added, "... whether or not a voluntary patient has made a request for release in accordance with the statute I have just referred to, it [sic] is to be determined by you in accordance with the standards of medical and hospital practice prevailing in this and similar communities at the time in question." *Id.* at 438. On appeal, the plaintiff challenged the instruction, stating that a reasonable man standard should have been applied on the request for release issue. The appellate court, although it did not hold that "a statute such as this which is so closely associated with the denial of personal liberties" must be read in light of a particular standard, *id.*, noted that the parties had agreed that some standard should be applied, and the court concluded that the one chosen by the trial court was appropriate. *Id.* Thus, it may be fair to conclude that the Florida courts, even in cases involving statutory rights to release from institutions, tacitly approve a requirement that the jury consider the reasonableness of the defendant's action.

The foregoing demonstrates, it is respectfully submitted, that there is substantial question as to what Florida law is on the decisive issues concerning this appeal. In this diversity case, in which Florida law is controlling, to paraphrase the majority opinion of Justice Douglas in *Lehman Bros. v. Schein*, 416 U.S. 386 at 391, 94 S.Ct. 1741 at 1744, 40 L.Ed.2d 215 (1974), resort to certification "would seem particularly appropriate in view of the novelty of the question and the great unsettlement of Florida law, Florida being a distant state. When federal judges in [Virginia] attempt to predict uncertain Florida law, they act, as we have referred to ourselves on this Court in matters of state law, as 'outsiders' lacking the common exposure to local law which comes from sitting in the jurisdiction."

Although the Supreme Court has frequently deferred to a construction of state law made by a district court sitting in that state and affirmed by a court of appeals whose jurisdiction includes the state whose law is construed, *see, e.g., Bishop v. Wood*, 426 U.S. 341, 345–46 & 346–47 n. 10, 96 S.Ct. 2074, 2077–78, 2078–79, 48 L.Ed.2d 684 (1976), no particular expertise in Florida law can be claimed in this case either by the district judge who tried the case or by

---

**2.** The law at that time stated:

"(3) Right to Release on Application.—

 (a) A voluntary patient who requests his release or whose release is requested in writing by his legal guardian, parent, spouse, or adult next of kin, shall be released forthwith, except that ...

 1. ...

 2. ...

 3. if the head of the hospital, within the hours of the ensuing business day, from the receipt of the request, files in the office of the county judge in the county where such patient is situate certification that in his opinion the release of the patient would be unsafe for the patient or others, release may be postponed for as long as the county judge determines to be necessary for the commencement of proceedings for judicial hospitalization, but in no event for more than five days."

Fla.Stat.Ann. § 394.20.

the members of this appellate panel. Even in situations in which the Supreme Court ordinarily defers to a federal court's construction of state law, circumstances, which I submit exist here, may indicate a different course should be followed and require certification of the state law questions to the state courts. *See Elkins v. Moreno*, 435 U.S. 647, 662 n. 16, 98 S.Ct. 1338, 1347 n. 16, 55 L.Ed.2d 614 (1978).

It is a commonplace that illegal drug usage has severely disrupted, and in some cases destroyed, the lives of many youths in our present-day society. In response to such conditions, programs of varying degrees of effectiveness have been established, some of an experimental nature, to attempt to treat young persons who have become physiologically or psychologically addicted to the use of these drugs. Straight, Inc., the appellant herein, apparently is one such program which has been developed. The legal atmosphere within which those programs are allowed to perform their function in a particular state is a matter of paramount state importance and should be decided in the first instance by state courts. *Id.*

Certification of the state law questions involved herein is consistent with the criteria established by this court for such certification in *Boyter v. C.I.R. Service*, 668 F.2d 1382, 1385 (4th Cir.1981). There is no question of federal law present and undecided, the decision of which would be wholly dispositive of this case; on the contrary, the state law questions are dispositive of this federal litigation and must necessarily be resolved in the course of this litigation. *Id.*

Since Florida has a certification rule, permitting discretionary Florida Supreme Court review of certified questions from the federal courts, Florida Appellate Rule 9.150; Florida Constitution, Art. V, § 3(b)(6), I respectfully submit that the questions of Florida state law which I have referred to herein should be certified to that court.